J-A01033-17

2017 PA Super 163

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| DONALD J. MCCLELLAND | |
| Appellant | No. 633 WDA 2016 |

Appeal from the Order April 4, 2016
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0003575-2015

BEFORE:  BOWES, OLSON AND STRASSBURGER,* JJ.

OPINION BY BOWES, J.:                    **FILED MAY 26, 2017**

In **Commonwealth v. Ricker**, 120 A.3d 349 (Pa.Super. 2015), *appeal granted*, 135 A.3d 175 (Pa. 2016)[1] we reviewed the 2013 amendment to Pa.R.Crim.P. 542, which permitted the Commonwealth to establish, via hearsay, any element of an offense for purposes of determining whether a *prima facie* case has been established that the actor committed a criminal offense. **Ricker** held that this Rule did not run afoul of the constitutional right to confront witnesses under either the Pennsylvania or United States constitutions. We left unaddressed whether notions of due process would require a different result. In this interlocutory appeal[2] from an order denying a pretrial motion for *habeas corpus* relief, Appellant today

---

[1]  The case was argued in December of 2016.
[2]  We discuss the basis for our jurisdiction in the text, *infra*.

*  Retired Senior Judge assigned to the Superior Court.

asks us to resolve that question in his favor. On these facts, we decline to do so, and therefore affirm.

**I**
Facts and Procedural History

Pennsylvania State Trooper Christopher Wingard filed a complaint accusing Appellant of indecent assault, indecent exposure, and corruption of minors for crimes committed against A.T., an eight-year-old child. The complaint related that on August 3, 2015, A.T.'s parents arrived at a Pennsylvania State Police barracks to report that A.T. told them that Appellant touched her face with his penis on June 27, 2015. Based on this information, an interview was scheduled at a Children's Advocacy Center with a specialist. A.T. provided further details of the incident at this interview, resulting in the criminal charges.

At the preliminary hearing, the Commonwealth called Trooper Wingard as its sole witness. He testified that he personally witnessed the interview via a video link and related to the magistrate the specific contents of A.T.'s interview. Three counts were held for trial, and the Commonwealth thereafter filed a criminal information charging Appellant with indecent assault, indecent exposure, and corruption of minors, all graded as misdemeanors of the first degree.

On March 23, 2016, Appellant filed a motion seeking a writ of *habeas corpus* dismissing the charges. The motion acknowledged ***Ricker*** as

controlling, but argued that holding the charges based on pure hearsay violated his rights of confrontation and due process under both the Pennsylvania and United States Constitutions.

On April 4, 2016, the trial court denied the motion. Appellant filed a timely notice of appeal, raising two issues: extraordinary circumstances justify this interlocutory appeal, and a substantive issue raising the aforementioned due process and confrontation arguments.

**II**

**A**
Jurisdiction and Statutory Text

We first address whether we have jurisdiction over this interlocutory appeal. In general, the denial of a pretrial writ of *habeas corpus* claiming a lack of sufficient evidence is not an appealable order. ***Ricker***, ***supra*** at 353. ***Ricker*** determined that exceptional circumstances warranted review of the appeal due to the important constitutional questions. ***Id***. at 354. Since the issue presented herein directly addresses an issue explicitly unresolved by ***Ricker***, we hold that the same reasoning applies and that we have jurisdiction to consider the merits of his claim.

The instant appeal concerns the intersection of two provisions of Rule of Criminal Procedure 542, which governs preliminary hearings. These provisions state:

> (C) The defendant shall be present at any preliminary hearing except as provided in these rules, and may:

(1) be represented by counsel;

(2) **cross-examine witnesses and inspect physical evidence offered against the defendant**;

. . .

(E) Hearsay as provided by law shall be considered by the issuing authority in determining whether a *prima facie* case has been established. **Hearsay evidence shall be sufficient to establish any element of an offense**, including, but not limited to, those requiring proof of the ownership of, non-permitted use of, damage to, or value of property.

Pa.R.Crim.P. 542 (emphases added).

**B**
<u>Appellant's Argument</u>

Appellant raises one issue for our review: Whether hearsay testimony from an affiant violates due process when that hearsay alone establishes a *prima facie* case at a preliminary hearing.[3] Appellant's brief at 14.

Appellant does not distinguish between substantive due process and procedural due process, nor does his argument specify what purported interest is at stake and, in light of those interests, why the provided procedure violates due process. He does not clarify whether this challenge is facial or as-applied. Instead, his argument essentially invokes due process

---

[3] We noted in **Ricker** that the terms "*prima facie*" and sufficient "probable cause" have been used interchangeably in the context of modern preliminary hearings.

- 4 -

as a substitute for unfair. We glean three major points advanced by Appellant.

First, he cites to the competing provision in Rule 542, which states that a defendant at the preliminary hearing has a right to counsel and may "cross-examine witnesses and inspect physical evidence offered against the defendant[.]" Pa.R.Crim.P. 542(C)(2). Therefore, Rule 542(E), while not violating the constitutional right to confrontation, vitiates the rule-based right to cross-examine a witness. In other words, *Ricker's* holding negates Rule 542(C)(2), since the Commonwealth can simply decline to call any witnesses with direct knowledge. "How is a defendant such as [Appellant] to 'cross-examine witnesses and inspect physical evidence' under Pa.R.Crim.P. 542(C)(2) when none is offered at the preliminary hearing?" Appellant's brief at 14.

Second, Appellant relies upon *Coleman v. Alabama*, 399 U.S. 1 (1970), which established that the preliminary hearing is a critical stage of the prosecution entitling a defendant to counsel. This point builds on the first: If Appellant is entitled to a preliminary hearing and counsel at that hearing, counsel must be able to cross-examine his primary accusers. Otherwise, the right to counsel and cross-examination at this stage are hollow guarantees.

Third, Appellant cites *Commonwealth ex. rel. Buchanan v. Verbonitz*, 581 A.2d 172 (Pa. 1990) (plurality), a case we discussed in

*Ricker*. The concurring opinion in *Verbonitz* opined that due process requires something more than pure hearsay to sustain a *prima facie* case.[4]

**III**

We begin by discussing the pertinent constitutional principles governing the initiation of criminal prosecutions.

**A**
<u>Federal Law and Constitutional Principles</u>

The Grand Jury Clause of the Fifth Amendment to the United States Constitution limits the federal government's ability to initiate prosecutions.

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger;

U.S. Const. Am. V. Infamous crimes are defined as those which are punishable by death or imprisonment for a term of over one year. *United States v. Graham*, 169 F.3d 787, 792 (3d Cir. 1999) (infamous crimes "came to be defined as crimes punishable by more than one year of confinement"). Other crimes may be prosecuted by information. *See Duke v. United States*, 301 U.S. 492, 495 (1937) ("The offense . . . was not subject to infamous punishment-therefore open to prosecution by

_____

[4] Appellant incorrectly maintains that *Ricker* ignored *Verbonitz*. Appellant attaches precedential significance to the outcome, but *Verbonitz* is a plurality decision as to its reasoning.

information."). The United States Supreme Court has held that a grand jury indictment may lawfully be secured on the basis of pure hearsay. *Costello v. United States*, 350 U.S. 359 (1956).

While "most of the provisions of the Bill of Rights apply with full force to both the Federal Government and the States," *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010), via the Due Process Clause of the Fourteenth Amendment, the Grand Jury Clause is not one of them. The High Court has applied a "selective incorporation" doctrine, in which the Fourteenth Amendment incorporates most, but not all, of the particular rights contained in the first eight Amendments to the United States Constitution. In *Hurtado v. California*, 110 U.S. 516 (1884), the High Court held that the Grand Jury Clause was not binding on the States. In that case, a district attorney, pursuant to California procedures, filed an information against Hurtado instead of seeking an indictment, charging him with murder. *Id*. at 517. Hurtado asserted that his subsequent conviction and sentence were void, as due process required an indictment by grand jury. The Court rejected that theory. "[W]e are unable to say that the substitution for a presentment or indictment by a grand jury of the proceeding by information after examination and commitment by a magistrate, certifying to the probable guilt of the defendant, with the right on his part to the aid of counsel, and to the cross-examination of the

witnesses produced for the prosecution, is not due process of law." *Id*. at 538.

As reflected in this quotation, California permitted cross-examination at the probable cause hearing. However, in *Lem Woon v. Oregon*, 229 U.S. 586 (1913), the Court confirmed that the ability to cross-examine was irrelevant to the constitutional issue. Therein, Lem Woon was convicted of murder after a prosecutor filed an information. The law in Oregon at the time "did not require any examination, or commitment by a magistrate, as a condition precedent to the institution of a prosecution by an information filed by the district attorney, nor require any verification other than his official oath." *Id*. at 587. The Court held that *Hurtado* applied, and this procedure did not violate due process.

> The distinction sought to be drawn between the present case and that of Hurtado, on the ground that the Oregon system did not require that the information be preceded by the arrest or preliminary examination of the accused, is untenable.
> . . . .
>
> [T]he 'due process of law' clause does not require the state to adopt the institution and procedure of a grand jury, [and] we are unable to see upon what theory it can be held that an examination, or the opportunity for one, prior to the formal accusation by the district attorney is obligatory upon the states.

*Id*. at 590. *Hurtado* remains good law. *See McDonald*, *supra* at 784, n. 30 (citing *Hurtado*).

Taken together, nothing obligates the States to provide any pretrial testing procedure whatsoever; the prosecutor's decision to file an information is sufficient to require a citizen to stand trial.[5]  However, the same is not true with respect to pretrial restraints on liberty—whether incarceration or any other restraint pending trial—absent an opportunity for a probable cause examination.  "[W]e do not think prosecutorial judgment standing alone meets the requirements of the Fourth Amendment." **Gerstein v. Pugh**, 420 U.S. 103, 117 (1975).  Thus, there is a distinction between requiring an individual to stand trial, and subjecting an accused to restraints on liberty, incarceration or otherwise, pending that trial, even though such restraints necessarily flow from the act of filing charges.

**B**
State Law and Constitutional Principles

The States are, of course, free to act where the Constitution does not compel them to do so.  Historically, criminal prosecutions could not be initiated in this Commonwealth, absent limited exceptions, via the filing of criminal informations.  That prohibition was removed with the Amendment of

---

[5]  Due process applies to, *inter alia*, notice requirements; *i.e.*, an accused has the right to know of which crimes he is being prosecuted.  However, that tells us nothing about any limitation on the power to require a citizen to answer those charges in the first instance, or an accused's right to challenge that determination.

May 15, 1973 to Article I, Section 10, which added the following emphasized

language to the Pennsylvania Constitution:

> Except as hereinafter provided no person shall, for any indictable offense, be proceeded against criminally by information, except in cases arising in the land or naval forces, or in the militia, when in actual service, in time of war or public danger, or by leave of the court for oppression or misdemeanor in office. **Each of the several courts of common pleas may, with the approval of the Supreme Court, provide for the initiation of criminal proceedings therein by information filed in the manner provided by law.**

Pa. Const. art. I, § 10 (emphasis added). *See Commonwealth v.*

*Webster*, 337 A.2d 914 (Pa. 1975) (noting that prior to this 1973

amendment, the Pennsylvania Constitution, with few exceptions, prohibited

the filing of criminal informations). Subsequent statutory authorization gave

effect to the amendment. *See* 42 Pa.C.S. § 8931(b) (permitting each of the

courts of common pleas, with approval of the Supreme Court, to permit

initiation of criminal proceedings by criminal information). In turn, our

Supreme Court has promulgated rules governing the initiation of criminal

charges, including Rule 542 and its hearsay provision.

Note, then, that the right to a preliminary hearing markedly differs

from the right to confront witnesses, as the latter right is codified in both

constitutions. "In all criminal prosecutions the accused hath a right. . . . to

be confronted with the witnesses against him," Pa. Const. Art. I, § 9; "In all

criminal prosecutions, the accused shall enjoy the right . . . . to be

confronted with the witnesses against him[.]" U.S. Const.Am. VI. In

contrast, there is no constitutional right to a preliminary hearing, as we have set forth, and Article I, § 10 contemplates the initiation of a prosecution via information. Thus, our Constitution cedes authority to the Supreme Court to dictate the procedures governing preliminary hearings.

**IV**

As a threshold matter, we must determine whether the fact that a preliminary hearing is purely statutory triggers due process protections. If a right is created by statute, it would follow that the right may be subsequently limited, if not eliminated.

We conclude that due process applies. Once a State elects to act in a field, due process protections inhere to the administration and regulation of the system. This point is illustrated by analogous cases discussing other criminal matters for which there is no constitutional right: the right to appeal and the right to collateral review. "Almost a century ago, the Court held that the Constitution does not require States to grant appeals as of right to criminal defendants seeking to review alleged trial court errors." *Evitts v. Lucey*, 469 U.S. 387, 393 (1985) (citing *McKane v. Durston*, 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894)). Yet, having established a right to an appeal, regulation of that system is subject to due process protections. In *Evitts*, the issue was whether a defendant's right to appeal could be terminated when appointed counsel failed to follow appellate rules. The Commonwealth of Kentucky argued that, since a state is not obligated to

provide a system of appellate review, any regulation thereof cannot implicate due process. The United States Supreme Court flatly rejected that premise. "The right to appeal would be unique among state actions if it could be withdrawn without consideration of applicable due process norms. . . . . In short, when a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution-and, in particular, in accord with the Due Process Clause." *Evitts*, *supra* at 400-01. Similarly, *Pennsylvania v. Finley*, 481 U.S. 551 (1987), which held that there is no right to collateral review, suggested that when a state opts to provide collateral review, the fundamental protections of the Due Process Clause of the Fourteenth Amendment apply. *Id*. at 401 (citing *Evitts*, but concluding the respondent "has suffered no deprivation, assuming for the moment that the Due Process Clause is relevant").

Thus, as a threshold matter, we conclude that due process principles apply to the procedures which implement the statutory right to preliminary hearing.

**V**

We now examine the standards governing our review of Appellant's due process claim. As a preliminary matter, we note that duly enacted legislation carries with it a strong presumption of constitutionality. *Commonwealth v. Swinehart*, 664 A.2d 957, 961 (Pa. 1995). This

principle extends to rules promulgated by our Supreme Court. ***Ricker***, ***supra*** at 362. The presumption of constitutionality will not be overcome unless the legislation clearly, palpably, and plainly violates the constitution. ***Swinehart***, ***supra***.

**A**
<u>Substantive versus Procedural Due Process</u>

The constitutions of this Commonwealth and the United States both provide due process protections. The Pennsylvania Constitution states:

> In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land.

Pa. Const. art. I, § 9. The Due Process Clause to the Fourteenth Amendment to the United States Constitution reads, "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." These two clauses are generally treated as coextensive. ***See Commonwealth, Department of Transportation v. Taylor***, 841 A.2d 108, 114 (Pa. 2004). Appellant does not assert that the Pennsylvania due process provisions offer any greater protection than its federal counterpart with respect to this issue. Thus, we draw on federal cases interpreting the scope of due process rights.

The Due Process Clauses contain both a procedural component and a substantive one. "[T]he Due Process Clause of the Fourteenth Amendment not only accords procedural safeguards to protected interests, but likewise protects substantive aspects of liberty against impermissible governmental restrictions." *Harrah Independent School District v. Martin*, 440 U.S. 194, 197 (1979). Appellant does not clarify whether his attack is based on a procedural or substantive theory.

In *Danforth v. Minnesota*, 552 U.S. 264 (2008), the Supreme Court explained that the Fourteenth Amendment's Due Process Clause is

> the source of this Court's power to decide whether a defendant in a state proceeding received a fair trial—*i.e.,* whether his deprivation of liberty was "without due process of law." . . . In construing that Amendment, we have held that it imposes minimum standards of fairness on the States, and requires state criminal trials to provide defendants with protections "implicit in the concept of ordered liberty."

*Id*. at 269–70 (citation omitted). The "implicit in the concept of ordered liberty" formulation refers to fundamental rights, *i.e.*, substantive due process. *See United States v. Windsor*, 133 S.Ct. 2675, 2714 (2013). Clearly, the right to a preliminary hearing is not implicit in the concept of ordered liberty, given that the federal constitution does not obligate the United States Government to hold a preliminary hearing before a neutral magistrate.

Any doubt that substantive due process is irrelevant to Appellant's claim is removed by *Albright v. Oliver*, 510 U.S. 266 (1994) (plurality).

- 14 -

Therein, the authorities had issued a warrant for Albright's arrest for the sale of fake cocaine to a confidential informant. Albright surrendered, was arrested, and then released on bond. The case was held for trial following a preliminary hearing, but the charges were later dismissed on the ground that the sale of fake cocaine was not a crime under state law. Albright then alleged a violation of his civil rights, theorizing that there is a substantive due process right to be free from criminal prosecution except upon probable cause. By definition, there was no probable cause to believe Albright committed an offense when the facts as alleged were not criminal.

Four Justices opined that there is no substantive[6] due process right in connection with the decision to prosecute, because the Fourth Amendment specifically governed the matter of pretrial deprivations of liberty. Hence, substantive due process did not apply. *Id*. at 275. Justice Kennedy, joined by Justice Thomas, concurred. Significantly, Justice Kennedy agreed that there is no substantive right to be free from prosecution except upon probable cause. However, he and Justice Thomas did not outright reject substantive due process protections on other grounds. "Albright's due process claim concerns not his arrest but instead the malicious initiation of a

---

[6] The Court specifically did not address procedural due process. "[Albright] claims that the action of respondents infringed his substantive due process right to be free of prosecution without probable cause. He does not claim that Illinois denied him the procedural due process guaranteed by the Fourteenth Amendment." *Id*. at 271.

baseless criminal prosecution against him." ***Id***. at 281. Therefore, a majority of the Court agreed that there is no substantive due process right to be free from criminal prosecution except upon probable cause. As Justice Kennedy explained:

> With respect to the initiation of charges, however, the specific guarantees contained in the Bill of Rights mirror the traditional requirements of the criminal process. The common law provided for a grand jury indictment and a speedy trial; it did not provide a specific evidentiary standard applicable to a pretrial hearing on the merits of the charges or subject to later review by the courts.
>
> Moreover, because the Constitution requires a speedy trial but no pretrial hearing on the sufficiency of the charges leaving aside the question of extended pretrial detention, any standard governing the initiation of charges would be superfluous in providing protection during the criminal process. If the charges are not proved beyond a reasonable doubt at trial, the charges are dismissed; if the charges are proved beyond a reasonable doubt at trial, any standard applicable to the initiation of charges is irrelevant because it is perforce met. . . .
>
> **In sum, the due process requirements for criminal proceedings do not include a standard for the initiation of a criminal prosecution.**

***Id***. at 282–83 (Kennedy, J., concurring) (emphasis added).

Thus, nothing in the constitution limits the Commonwealth's ability to file criminal charges against its citizens. A prosecutor's belief and affirmation to such effect is sufficient. "[W]e adhere to the Court's prior holding that a judicial hearing is not prerequisite to prosecution by information." ***Gerstein***, ***supra*** at 119 (citing ***Lem Woon***, ***supra***).

- 16 -

Accordingly, we find that Appellant's claim must be analyzed under the rubric of procedural due process.

**B**
<u>Procedural Due Process</u>

Having determined that this appeal sounds in procedural due process, we must determine whether the procedures afforded to Appellant in connection with the right to a preliminary hearing are sufficient. Perhaps Appellant broadly invokes the protections of due process since it is, by definition, a malleable concept. "It is by now well established that due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances . . . . [It] is flexible and calls for such procedural protections as the particular situation demands." ***Gilbert v. Homar***, 520 U.S. 924, 930 (1997) (citations and quotation marks omitted). "In terms of procedural due process, government is prohibited from depriving individuals of life, liberty, or property, unless it provides the process that is due. While not capable of an exact definition, the basic elements of procedural due process are adequate notice, the opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." ***Commonwealth v. Turner***, 80 A.3d 754, 764 (Pa. 2013). We first ask if there is a life, liberty, or property interest at issue, and, if so, whether the procedures attendant to that deprivation were constitutionally sufficient. ***Id***.

In **Turner**, **supra**, our Supreme Court analyzed an as-applied procedural due process challenge to this Commonwealth's collateral relief statutory scheme. **Id**. We find that **Turner** provides the framework for our analysis. Just as there is no constitutional right to a preliminary hearing, the States are not constitutionally obligated to provide collateral relief.

> When a state choses to offer help to those seeking relief from convictions and custody, due process does not "dictat[e] the exact form such assistance must assume." Moreover, states need not provide post-conviction petitioners with "the full panoply of procedural protections that the Constitution requires be given to defendants who are in a fundamentally different position-at trial and on first appeal as of right." **Finley**, 481 U.S. at 552, 107 S.Ct. 1990. Indeed, the United States Supreme Court has stated that post-conviction petitioners "have only a limited interest in post-conviction relief." To deny due process, the complained-of aspect of the state post-conviction procedures must be "fundamentally inadequate to vindicate" the defendant's liberty interest, and must offend "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental" or transgress "any recognized principle of fundamental fairness in operation

**Id**. at 764.

Appellant has failed to specify what interest is at stake. Interests protected by the Fourteenth Amendment arise from two sources: the due process clause itself, and the laws of the State. **See Kentucky Dept. of Corr. v. Thompson**, 490 U.S. 454, 460 (1989). Appellant appears to refer to the state law right to a preliminary hearing broadly, and, more specifically, the right to cross-examine witnesses at that hearing. We glean from Appellant's argument that the supplied procedure is "fundamentally

inadequate to vindicate" his rule-based right to confront since the Commonwealth can elect to render it meaningless through hearsay.

We disagree with this premise. In truth, Appellant's real interest does not lie in cross-examining the witness in an attempt to secure dismissal at the preliminary hearing; rather, it rests in probing the strength of the Commonwealth's case for the subsequent trial.[7] Significantly, Appellant does not claim that a *prima facie* case would not have been established if A.T. had testified at the preliminary hearing. Instead, Appellant complains that he was unable to explore the lack of a prompt complaint by the victim, why the victim and her family allegedly remained in contact with Appellant after the alleged crimes, or why other witnesses present at the scene of the crime did not report to the police. Those matters go strictly to credibility, which, as Appellant recognizes, is irrelevant at a preliminary hearing. Thus,

---

[7] In this sense, Appellant's argument is an alternative way of saying that he is entitled to impeachment evidence prior to trial. Prosecutors are, of course, already obligated to disclose impeachment material. "Material impeachment evidence is included within the scope of the **Brady**[**v. Maryland**, 373 U.S. 83 (1963)] rule." **Commonwealth v. Johnson**, 727 A.2d 1089, 1094 (Pa. 1999).

The United States Supreme Court has declined to require prosecutors to disclose **Brady** material prior to a plea. "[I]mpeachment information is special in relation to the *fairness of a trial*[.]" **United States v. Ruiz**, 536 U.S. 622, 629 (2002) (emphasis in original). This further underscores the point that, whatever the merits of permitting cross-examination to develop weaknesses in a case, it simply is not constitutionally required. "There is no general constitutional right to discovery in a criminal case[.]" **Weatherford v. Bursey**, 429 U.S. 545, 559 (1977).

the reliability of the *prima facie* determination would in no way be enhanced by cross-examining A.T.

Furthermore, the effect of an erroneous determination in preliminary hearings is minimal when viewed with respect to the magistrate's decision to hold the case for trial. Indeed, one of the primary reasons for not accepting interlocutory appeals in these cases is the fact that the trial itself will cure any errors. If Appellant is guilty beyond a reasonable doubt, then any flaw in the preliminary hearing process is irrelevant, and, if he is acquitted, then there is no permanent loss of liberty. Additionally, even in those cases where the magistrate refuses to hold the case for a trial, nothing prevents the Commonwealth from refiling the charges.

In sum, Appellant fails to show that an individual subjected to a preliminary hearing, which is not constitutionally mandated, is entitled to "the full panoply of procedural protections that the Constitution requires be given to defendants who are in a fundamentally different position-at trial and on first appeal as of right." **Turner**, **supra** at 764. Just as a prisoner has a limited interest in post-conviction rights, so too does an accused have a limited interest in the preliminary hearing. The hearing serves a gatekeeping function only; defendants who face a preliminary hearing are not on the same footing as a defendant undergoing an actual trial, or pursuing an appeal as of right. Hence, we hold that the preliminary hearing procedure must simply provide adequate notice, the opportunity to be

heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case. Those criteria were satisfied in the present case.

Appellant's only argument that the supplied process failed to meet these requirements, aside from his inability to cross-examine his accuser, largely rests on Justice Flaherty's concurring opinion in **Verbonitz**. We agree that the facts of **Verbonitz** are virtually indistinguishable from the case *sub judice*. Therein, the Commonwealth prosecuted Verbonitz for numerous crimes against a seven-year-old child. The Commonwealth called only the investigating police officer, who presented the hearsay testimony of the victim as told to the officer.

The plurality decision determined that the Commonwealth failed to present sufficient evidence to sustain a *prima facie* case. Three Justices found that the presentation of hearsay violated confrontation rights, a position we rejected in **Ricker**. Justice Flaherty, joined by Justice Cappy, authored a concurring opinion, opining that holding a defendant for a criminal trial based on pure hearsay violates due process. Therefore, a majority agreed that the Commonwealth failed to sustain its *prima facie* burden, but did not agree on a legal rationale.

Since **Verbonitz** is a plurality decision, we believe the due process arguments raised by Justice Flaherty warrant further examination, especially since Appellant largely adopts those views as his own. Justice Flaherty's

concurring opinion recognized that there is no constitutional right to a preliminary hearing. He nevertheless concluded that due process required something more than pure hearsay.

> I deem this to be a requirement of due process. In **Commonwealth, Unemployment Compensation Board of Review v. Ceja**, 493 Pa. 588, 616, 427 A.2d 631, 645 (1981), a plurality of this Court referred to "this Commonwealth's long-standing requirement that administrative findings must be supported by some evidence that would be admissible over objection in a court of law." This author expressed the view that "[f]undamental due process requires that no adjudication be based solely on hearsay evidence." **Id.** at 619, 427 A.2d at 647. The reference in **Ceja** was to a final adjudication of property rights, but the principle *a fortiori* applies with equal force in a preliminary hearing-a critical stage of a criminal proceeding in which life, death, liberty, and property are all at issue.
>
> Applying this principle to this case requires the conclusion that the hearsay statement of the police officer was insufficient, *vel non,* to establish a prima facie case against appellant. It was a hearsay statement which could not be admitted over objection in a criminal trial and thus, standing alone, it was insufficient to establish a prima facie case, which . . . must be based on evidence which could be presented at the trial in court. I therefore concur in the judgment that the Commonwealth's evidence at appellant's preliminary hearing failed to establish a prima facie case, and that appellant is entitled to discharge.

**Id**. at 175–76 (citation omitted).

We read this opinion as expressing a view that due process requires an adversarial probable cause determination in order to hold a person for trial. That claim sounds in substantive due process, which is contradicted by United States Supreme Court precedent, as made clear in **Albright, supra**. Furthermore, while "life, death, liberty, and property" may all be at issue in

- 22 -

the event an accused is actually convicted, the preliminary hearing is obviously not a **final** adjudication of those issues. That point is glossed over by the citation to Justice Flaherty's own opinion discussing final adjudication of property rights. Moreover, **Verbonitz** was decided before the amendments to Rule 542 at issue herein. As a matter of procedural due process, the concurring opinion obviously could not account for later changes to that procedure. Justice Flaherty's points, therefore, do not speak to the fact that our Supreme Court amended the applicable procedure.

We are mindful that significant liberty restraints may result from requiring an individual to stand trial, but the probable cause required for those determinations[8] is separate from requiring a citizen to stand trial in the first place. The Fourth Amendment, not due process, applies to those pretrial restraints. **Gerstein**, **supra**; **Manuel v. City of Joliet, Illinois**, 137 S. Ct. 911, 917–18 (2017) ("That Amendment, standing alone, guaranteed a fair and reliable determination of probable cause as a condition for any significant pretrial restraint . . . those detained prior to trial without

---

[8] **See Kaley v. United States**, 134 S.Ct. 1090, 1104 (2014) ("[A]n adversarial process is far less useful to the threshold finding of probable cause, which determines only whether adequate grounds exist to proceed to trial . . . [probable cause], by its nature, is hard to undermine, and still harder to reverse.").

such a finding could appeal to the Fourth Amendment's protection against unfounded invasions of liberty.") (quotation marks and citations omitted).

**VI**

For the foregoing reasons, we decline to find that Appellant's due process rights were violated. Appellant's suggestion that his rule-based right to confront witnesses was an empty guarantee is belied by the record. Appellant was able to cross-examine the primary investigator, who witnessed A.T.'s interview, regarding the circumstances of the statement, the details of the statement, and what steps he did or did not take during the investigation. Rule 542(C)(2) thus served a clear purpose, albeit not the one Appellant wanted. Moreover, he was free to challenge the plausibility and reliability of the hearsay when addressing the *prima facie* question. In light of the foregoing constitutional principles, we cannot find that the inability to subject the primary accuser to adversarial examination violated due process.

Finally, we note that our holding is predicated on the facts, with consideration of Appellant's ability to cross-examine the primary investigator. An extremely permissive reading of Rule 542(E) would mean that a *prima facie* case is **always** satisfied through the presentation of hearsay. As an extreme application, the Commonwealth could sustain its burden by presenting the testimony of a fellow prosecutor who spoke to a police officer, who had read a report, which stated that an anonymous

citizen called to report that a defendant committed a series of acts that met the material elements of some charged crime. This decision does not suggest that the Commonwealth may satisfy its burden by presenting the testimony of a mouthpiece parroting multiple levels of rank hearsay.[9]

Additionally, there is no reason to think that magistrates do not already apply the similar Fourth Amendment probable cause standard used in other contexts where decisions are made on the basis of hearsay.[10] ***See e.g. Commonwealth v. Smith***, 784 A.2d 182 (Pa.Super. 2001) (probable

---

[9] For example, Iowa states that a magistrate may consider hearsay if there is a substantial reason to believe that the source is credible:

> b. *Probable cause finding.* If from the evidence it appears that there is probable cause to believe that an offense has been committed and that the defendant committed it, the magistrate shall order the defendant held to answer in further proceedings. The finding of probable cause shall be based upon substantial evidence, which may be hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished. The defendant may cross-examine witnesses and may introduce evidence in the defendant's own behalf.

I.C.A Rule 2.2(4). ***See*** W.R.LaFave *et al.*, *Criminal Procedure*, § 14.4(b) (4th ed.) (discussing three general approaches to applicability of rules of evidence at preliminary hearings).

[10] There is an obvious selection bias at play, as appellate courts are unlikely to encounter a case where a magistrate declines to hold a case on the basis of rank hearsay. Presumably, prosecutors would simply re-file in those cases and present witnesses with a closer connection to the crime.

cause for issuance of a search warrant permits a common-sense decision given all the information, including the basis of knowledge of persons supplying hearsay; various indicia of reliability and unreliability considered). If prosecutors relied upon multiple levels of hearsay to satisfy the *prima facie* standard, nothing prevents an accused from arguing that the information is so unreliable as to fail to meet probable cause standards. In this respect, the presence of an attorney serves a clear purpose, as counsel would obviously be in a better position to convince the magistrate that probable cause is lacking.

None of this is to say Appellant's arguments are unpersuasive. Cross-examining Appellant's accuser might well have led to fertile grounds for impeachment at a later trial, which would have obvious value as recorded testimony under oath. Permitting Appellant to do so may be wise as a matter of policy, but we do not think that due process requires it. Moreover, this Court is not only ill-equipped to fashion a one-size-fits-all rule[11] in light of competing law enforcement and administrative interests, we

_____

[11] There are compelling reasons to limit cross-examination of primary accusers in cases such as domestic violence, witness intimidation, and child abuse when the preliminary hearing is held close in time to the alleged crime. **See e.g.** 42 Pa.C.S. § 5985.1 (permitting introduction of out-of-court statement made by a child victim or witness under certain conditions). These concerns would not equally apply to run-of-the-mill cases involving police officer testimony. The question of how much hearsay should be permitted is not for us to decide.
*(Footnote Continued Next Page)*

are constitutionally barred from doing so. Pa.Const. art. V, § 10(c) (Supreme Court shall have the power to promulgate rules governing procedure).

Order affirmed.

Judge Olson joins the opinion.

Judge Strassburger files a dissenting opinion.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/26/2017

_(Footnote Continued)_ ————————