J-A23008-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROBERT DELAWRENCE WILLIAMS | : | |
| | : | |
| Appellant | : | No. 926 WDA 2017 |

Appeal from the Judgment of Sentence November 9, 2016
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0001710-2016

BEFORE:  BOWES, J., SHOGAN, J., and STABILE, J.

MEMORANDUM BY BOWES, J.:                    FILED FEBRUARY 1, 2019

Robert Delawrence Williams appeals from the judgment of sentence of seven to fourteen years incarceration imposed following his jury trial convictions for unlawful contact with a minor, corruption of minors, and indecent assault.  We vacate and remand for a new trial.

The victim, J.W., is Appellant's biological daughter.  Appellant began abusing J.W. when she was fourteen years old.  J.W. testified to two particular incidents.  The first occurred at the home of J.W.'s sister, where J.W. was living.  Appellant came home from work at approximately 11:00 p.m., and joined J.W. while she was watching a movie.  Appellant unhooked her bra and touched her breasts.  He also placed his hand on her vagina.  J.W. punched Appellant, who thereafter left the room.  A similar incident occurred at the home of J.W.'s mother.

J.W. eventually disclosed the abuse to her uncle, who in turn encouraged her to tell an authority figure. J.W. told a security guard, which resulted in a police report, filed June 29, 2015. J.W. participated in a forensic interview with a specialist at Children's Hospital, which took place on September 14, 2015.

Appellant was charged with one count each of rape, aggravated indecent assault, incest, unlawful contact with a minor, corruption of minors, and indecent assault. Appellant elected to proceed pro se. At trial, Lieutenant Ralph Johnson was called following J.W.'s testimony, and the video of J.W.'s forensic interview was played to the jury over Appellant's objection. Appellant then asked, "Will I have an opportunity to recross-examine the child?" The trial court said, "No." N.T., 8/22-24/16, at 78.

At the conclusion of trial, the jury convicted Appellant of unlawful contact with a minor, corruption of minors, and indecent assault. He was acquitted at the remaining charges. Appellant was originally sentenced to ten to twenty years incarceration. Appellant timely appealed,[1] and presents the following claims for our review:

_____

[1] At the conclusion of sentencing, Appellant requested an attorney for purposes of appeal. The trial court orally granted that request but did not enter a written order. Appellant thereafter filed timely pro se motions. Counsel was appointed at some point and filed a request to file post-sentence motions nunc pro tunc, which the trial court granted. Counseled motions were filed, and the trial court agreed that Appellant's originally imposed sentence

> I. Did the trial court abuse its discretion in admitting the video of the forensic interview with [J.W.] when that video was inadmissible hearsay used for the truth of the matter asserted?
>
> II. Did the trial court abuse its discretion in denying a pre-trial motion arguing that [J.W.]'s failure to testify at the preliminary hearing violated [Appellant]'s due process rights and Pa.R.Crim.P. 542(C)?

Appellant's brief at 6.

We hold that the first issue warrants relief.[2]  Our standard of review is for an abuse of discretion.  "The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error."  Commonwealth v. Shull, 148 A.3d 820, 845 (Pa.Super. 2016) (citation omitted).  The misapplication of the law constitutes an abuse of discretion.  "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law[.]"  Commonwealth v. Mickel, 142 A.3d 870, 874 (Pa.Super. 2016).

_____

of ten to twenty years was illegal.  Appellant filed a new set of post-sentence motions, and timely appealed from their denial.

The caption reflects an appeal from the original judgment of sentence, not the resentencing.  Since Appellant is entitled to a new trial, the caption remains as-is.

[2] Appellant's second claim is foreclosed by Commonwealth v. McClelland, 165 A.3d 19 (Pa.Super. 2017), appeal granted, 179 A.3d 2 (Pa. 2018). Appellant "preserves the issue . . . in the event that the Supreme Court overrules McClelland."  Appellant's brief at 35.

The trial judge justified the introduction of the video statement per Pa.R.E. 803.1. The court reasoned:

> Our Superior Court specifically addressed the admissibility of forensic interviews in Commonwealth v. Shelton, 170 A.3d 549 (Pa.Super. 2017). In Shelton, the Court held that a video recording of a forensic interview was admissible at trial under the recorded recollection exception to the hearsay rule. [Id. at] 553[.]
>
> Here, the forensic interview took place a few months after she reported the assaults – and almost a year before the trial took place. The video of the interview was significantly closer in time to the abuse than the trial, when the events were fresher in her memory. Though [J.W.] did not testify that she had forgotten the details of the assaults, [Appellant]'s pro se cross-examination was scattered and combative. Given [J.W]'s reluctance to subject herself to questioning by [Appellant] (she did not attend the Preliminary Hearing due to emotional distress issues and absconded from her foster home the night before trial was originally scheduled to begin), the forensic interview was useful to the jury in that it was her complete recitation of the events effectuated by a neutral questioner. Under these circumstances, akin to the facts of Shelton, this [c]ourt did not err in admitting the video of the forensic interview into evidence and allowing it to be played to the jury.

Trial Court Opinion, 12/4/17, at 6-7.

The Commonwealth agrees with Appellant that the evidence was not admissible under that analysis, and we concur in that conclusion. Introduction of a prior recorded recollection is permitted as an exception to hearsay, provided the following criteria are established:

> The following statements are not excluded by the rule against hearsay if the declarant testifies and is subject to cross-examination about the prior statement:
>
> . . . .

- 4 -

(3) Recorded Recollection of Declarant-Witness. A memorandum or record made or adopted by a declarant-witness that:

> (A) is on a matter the declarant-witness once knew about but now cannot recall well enough to testify fully and accurately;
>
> (B) was made or adopted by the declarant-witness when the matter was fresh in his or her memory; and
>
> (C) the declarant-witness testifies accurately reflects his or her knowledge at the time when made.

If admitted, the memorandum or record may be read into evidence and received as an exhibit, but may be shown to the jury only in exceptional circumstances or when offered by an adverse party.

Pa.R.E. 803.1.

There are several reasons that the video fails to satisfy this exception, but it suffices to pick one: J.W. was not subject to cross-examination about the prior statement. Thus, even if all remaining elements were met—and they were not—the trial court erred by failing to permit cross-examination, something Appellant explicitly requested. Therefore, the trial court erred in admitting the evidence under this hearsay exception.

We now turn to whether the evidence could be properly admitted via an alternate theory. The Commonwealth invokes the "right for any reason" doctrine, arguing that the evidence was separately and independently admissible under Pa.R.E. 613, which permits the introduction of prior consistent statements for rehabilitative purposes. "According to the 'right-for-any-reason' doctrine, appellate courts are not limited by the specific

grounds raised by the parties or invoked by the court under review, but may affirm for any valid reason appearing as of record." Commonwealth v. Fant, 146 A.3d 1254, 1265 n.13 (Pa. 2016).

We hold that even if this Court could invoke the right for any reason doctrine under these circumstances, Rule 613 does not apply. The text states:

(c) Witness's Prior Consistent Statement to Rehabilitate.

Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of:

(1) fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose; or

(2) having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness's denial or explanation.

Pa.R.E. 613(c).

The Commonwealth argues that the interview was properly admitted under subsection (c)(1). "Appellant's questions insinuated that J.W. had an improper motive and she fabricated allegations against Appellant. Her prior consistent statement – i.e., the forensic interview – was properly admitted to corroborate her testimony that she did not make up allegations against Appellant and was not retaliating[.]" Commonwealth's brief at 19. We disagree.

For the sake of completeness, we note that in Commonwealth v. Willis, 552 A.2d 682 (Pa.Super. 1988) (en banc), our Court suggested, but did not hold, that admitting prior consistent statements to bolster the testimony of a child witness in sexual cases is per se permissible. Willis analyzed the issue as one involving an intersection of hearsay and relevancy. The Court reasoned that prior consistent statements are not hearsay because they are not offered for their truth, and, while relevancy principles would usually bar such testimony, the specific considerations involved in child sexual abuse cases justify their introduction.

The Commonwealth does not belabor this corroboration theory, but the trial court alludes to it by quoting language used in Willis. "The video of the interview was significantly closer in time to the abuse than the trial, when the events were fresher in her memory." Trial Court Opinion, at 12/4/17, at 6. To the extent we are permitted to examine this conceivable basis, Commonwealth v. Bond, 190 A.3d 664 (Pa.Super. 2018), discredits it. Bond thoroughly explains why the view set forth by our prior cases regarding the introduction of prior consistent statements for purely corroborative purposes is at odds with the express language of Rule 613. See id. at 667-70. Bond observed that Willis pre-dated the enactment of Rule 613 and the Tender Years Act. Thus, Willis has been superseded. Id. at 670 n.4. Hence, the evidence was not admissible merely because it corroborated J.W.'s testimony.

We now address whether the video was admissible for rehabilitative purposes. Resolving that inquiry requires an examination of the timing of the statements in light of the impeachment. A simple way to determine whether the prior statement predated the alleged fabrication is to assume that the jury credits the theory insinuated by the impeachment. By way of illustration, we shall apply this framework to Commonwealth v. Baker, 963 A.2d 495 (Pa.Super. 2008), which the Commonwealth cites as justification for the trial court's ruling.

In Baker, we upheld the admission of a DVD of a child victim's interview with a doctor per Rule 613. The Commonwealth asked for introduction of the video on the grounds that "during the cross-examination of seven[-]year [-]old J.B., she was asked questions which the prosecution believed suggested that J.B. had been induced to fabricate her testimony." Id. at 504. Defense counsel insinuated that J.B. was told what to say in court, and the trial judge agreed with the prosecutor's view that "[counsel] suggested that J.B. had been induced to fabricate her testimony." Id. at 505. The trial court admitted the interview, and we affirmed.

Thus, two statements were at issue in Baker: (1) the victim's testimony, given at trial in November of 2006; and (2) the prior statement given on December 29, 2005. Baker's attorney suggested during questioning that the child's mother and prosecutor met with the child shortly before the trial and as a result induced the trial testimony. Assuming that the jury

accepted that this theory was true, there was a risk that the jury would discredit the child's testimony as the product of that inducement. May the Commonwealth introduce the forensic interview under Rule 613 in response? Yes. That the jury could believe that the victim was fabricating the trial testimony due to the actions of her mother and the prosecutor warranted informing the jury that the victim gave statements that were consistent with the trial testimony prior to that alleged interference. Therefore, the prior statement served a rehabilitative purpose, as the forensic interview undercut the idea that the testimony at trial was the product of the purported coercion, which happened after the forensic interview was recorded.[3] Thus, Baker is consistent with Rule 613.

Applying this same framework to the instant case demonstrates why Rule 613 cannot justify admission of the evidence. We agree with the Commonwealth that Appellant suggested, implicitly and explicitly, that J.W. fabricated the allegations, as set forth in its brief:

> Through his cross-examination questioning, Appellant sought to imply that J.W. fabricated the events and had an improper motive in making the allegations. During cross-examination, the victim recounted an incident where she "got choked by my mom for [Appellant]." She accused Appellant of allowing J.W.'s mother to assault and choke her. J.W. also spoke of an April 2015 incident where Appellant hit her and she hit him back. J.W. acknowledged that for portions of December, January, and February she was with

---

[3] Obviously, rehabilitative statements by their nature tend to corroborate the testimony. But the fact that corroboration is an inevitable byproduct of rehabilitation is no justification for dispensing with the rehabilitation requirement.

her grandmother. Furthermore, she admitted that in both May and June of 2015, CYF turned J.W. over to Appellant after incidents with her mother. J.W. had opportunities to tell the police and CYF what was occurring with Appellant, and she did not do so. This forced the prosecutor to elicit testimony from J.W. on re-direct examination that she was afraid to tell the police or CYF about Appellant. Additionally, J.W. said she could not remember the specific dates of the assaults because they happened frequently. J.W. testified that she was accusing Appellant of inappropriate sexual acts because they happened and not because she wanted to retaliate against Appellant for being physically assaulted and going into placement. On re-cross examination, J.W. admitted that CYF came to her mother's house five times and she never made allegations about Appellant. Despite the fact that CYF was responding to incidents with J.W.'s mother and not Appellant, J.W. concluded her testimony with "[CYF] got me out of that house. They put me in a safe place that I ran from because of you."

Appellant's questions insinuated that J.W. had an improper motive and she fabricated allegations against Appellant. Her prior consistent statement - i.e., the forensic interview - was properly admitted to corroborate her testimony that she did not make up allegations against Appellant and was not retaliating for family disputes and/or being removed by CYF from her mother's home. See Commonwealth v. Baker, 963 A.2d 495, 502-04 (Pa.Super. 2008), appeal denied, 992 A.2d 885 (Pa. 2010).

Commonwealth's brief, at 18-20.

This argument fails to properly account for the timing inquiry under the framework set forth supra. Assume that the jury credited Appellant's theory as true, and therefore believed that J.W. fabricated the allegations against Appellant due to some combination of: Appellant's failures to stop J.W.'s mother from abusing J.W.; the April 2015 incident where Appellant hit J.W.; or that CYS placed J.W. with Appellant after multiple incidents with her mother. May the Commonwealth introduce the forensic interview as a prior consistent statement? Unlike Baker, the answer is no. J.W.'s statements,

relayed to a forensic interviewer, did not antedate any of the listed events. In fact, her statements to the interviewer would, under Appellant's theory of fabrication, be consistent with the alleged fabrication because it would further the purported purpose of falsely implicating Appellant.[4] The Commonwealth's rationale differs little from the "ongoing fabrication" theory flatly rejected by Bond:

> The Commonwealth argues that Appellant, in challenging Child's credibility based on her varying accounts of the assault, has accused Child of fabricating her accounts "on an ongoing basis," and that therefore the Commonwealth was entitled to introduce the Interview Video, which was largely consistent with Child's most incriminating allegations. Given the governing precedents discussed above, we do not believe we can construe Rule 613(c)(1) so broadly. Under the Commonwealth's analysis, a prosecutor could, in any case where the defense probes a witness's inconsistent accounts of a crime, rely on Rule 613(c)(1) to trumpet the most incriminating version regardless of whether it antedates the alleged "fabrication, bias, improper influence or motive, or faulty memory." Rule 613(c)(1) does not authorize that approach.

Bond, supra at 670.

---

[4] We acknowledge that timing is not the only consideration, and the identity of the listener is a relevant consideration. The facts, as stated supra, indicated that J.W. disclosed the abuse to her uncle, who in turn encouraged J.W. to report the matter to an authority figure.

Clearly, the alleged motivations for the disclosure may remain the same as applied to J.W.'s uncle. But the outcome may have been different if the Commonwealth had sought to call the uncle and introduce whatever had been said to him. Here, Appellant's theory was that J.W. disclosed the allegations for the purposes of criminal liability, and the statements given to the forensic interviewer do not rehabilitate the trial testimony.

For the foregoing reasons, we find that Rule 613 cannot salvage the trial court's ruling. As such, we now address whether the error was harmless beyond a reasonable doubt.

> Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was de minimis; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

Commonwealth v. Chmiel, 889 A.2d 501, 521 (Pa. 2005) (quoting Commonwealth v. Robinson, 721 A.2d 344, 350 (Pa. 1998)). Furthermore:

> An error will be deemed harmless where the appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict. If there is a reasonable possibility that the error may have contributed to the verdict, it is not harmless. The burden of establishing that the error was harmless rests upon the Commonwealth.

Id. at 528–29 (citations omitted).

The Commonwealth invokes the second possibility, arguing that while the interview discussed matters not testified to, that evidence actually benefitted Appellant. Additionally, the Commonwealth argues that the remaining portions were merely cumulative of J.W.'s properly-introduced trial testimony.

> Appellant benefited by the admission of the video in that the victim retreated from some of her initial allegations. At trial, the victim did not testify that Appellant utilized his penis during any of the assaults; she testified that he touched her chest and vaginal region with his hands. Whereas, in the forensic interview, J.W. stated that on one occasion, Appellant tried to put his "dick" in her

- 12 -

but she felt it soft against her leg. The jury knew how to resolve the discrepancy between the forensic interview and the trial testimony as it acquitted Appellant of the most serious charges - Rape, Aggravated Indecent Assault, and Incest of a Minor. The rest of J.W.'s testimony was substantially similar to what she said in the forensic interview. Thus, the admission of video provided no more substantive information than that given by J.W. during her testimony; it was cumulative. The prosecutor never specifically mentioned the forensic video during the closing remarks. All she said was: "kids who make up things can't stick with a story over and over again. She has been consistent." Hence, it does not appear that admission of the video bolstered J.W.'s testimony or credibility.

Commonwealth's brief at 22-23 (citations and footnote omitted).

Perhaps this logic would justify a finding of harmless error if those were the only matters disclosed on the tape.[5] However, the Commonwealth, to its credit, acknowledges that the forensic interview contained statements that discussed matters far exceeding the scope of J.W.'s testimony.

Cognizant of its duty of candor to this Court, the Commonwealth acknowledges that Appellant did not have the opportunity to cross-examine the victim about her forensic interview, and the interview contained some seemingly inadmissible information. In the interview, J.W. claimed: Appellant did similar things to her cousin Angie and [J.W.'s] sister, Appellant went to jail for doing things to Angie, and Appellant smoked marijuana around her and acted "crazy" and "psycho."

Id. at 23-24 (citations omitted).

_____

[5] We are highly skeptical of the Commonwealth's argument that there is no error because Appellant benefited from the evidence that he sought to preclude. Even if the prosecutor's mistaken view of the law was ultimately helpful—a doubtful proposition—the prosecution's intent was obviously not altruistic. The essence of our adversarial system is that the parties decide how to present their cases within the confines of the law.

This evidence was clearly inadmissible, and its prejudicial effect obvious. The jury heard, unbidden and unchallenged, that Appellant was previously incarcerated. Worse yet, the jury heard that Appellant went to prison for doing "similar things" to J.W.'s cousin and J.W.'s sister. That evidence was highly inflammatory and prejudicial. For this reason alone, we hold that the Commonwealth failed to meet its burden of establishing that the error was harmless beyond a reasonable doubt.

The Commonwealth's response to this is that Appellant cross-examined Lieutenant Johnson, whom the Commonwealth used to introduce the tape into evidence, about these matters. We quote its argument in that regard:

> When this Court examines the certified record, it will find that Appellant rebutted these statements and actually proved some of them to be not true. He elicited testimony that Lieutenant Johnson never interviewed anyone J.W. mentioned in the forensic interview or her family members. Through the following cross-examination of Lieutenant Johnson, the jury also learned that Appellant was never arrested or imprisoned for committing sexual crimes against other children:
>
> Q. The other question I have for you, Detective, is at any time in your investigation did you - from your experience as a sexual assault investigator, if an individual had, let's say, multiple children, do you stop there or do you investigate further? I'm just questioning.
>
> A. During the investigation if there is any evidence to prove or to substantiate that other family members of the victim became victims, yes, we would investigate that. But there was no disclosure made about any other persons or any other reports filed about any other persons being victimized by you.
>
> Q. We just watched the child articulate this and that and that and that the father went to jail for this and that. We just watched it, just now.

A. Yes.

Q. So the question I have: Why wasn't a thorough investigation done with respect to what she said?

A. Because we were investigating the - you seen the forensic. We were investigating the allegations that were made by [J.W.] against you, no other family member.

Q. But she mentioned them. Wouldn't you investigate –

A. She didn't mention any other family member being victimized.

Q. You watched the video. It articulates - it says [Appellant] did this and [Appellant] did that and [Appellant] went to jail for that. It says it in the video.

A. You already served time for that, so why would I reinvestigate that?

Q. Due to the fact of your investigation where is there any type of record that [Appellant] went to prison?

A. There is none. You are saying that your daughter said on the video that you went to prison. Those are your words. You went to prison for the things that you are claiming that may have happened to other kids. There was no reports filed about any other people other than [J.W.] from what you did to her. No other kids. No other siblings. No other relatives. No neighborhood kids. Just [J.W.], what you did to her.

Id. at 24-25 (citations omitted, emphasis added).

We disagree with the Commonwealth's interpretation of this testimony. Lieutenant Johnson's answers do not "disprove" J.W's assertion that Appellant went to prison for similar crimes. The testimony is unclear on this point. As highlighted, the Lieutenant stated, "You already served time for that," in answer to Appellant's comment that the video related that "[Appellant] went

to jail for that." In context, Lieutenant is confirming that Appellant went to jail for "that," whatever "that" may be. Simultaneously, we recognize that the follow-up exchange stated there is no evidence that Appellant went to prison. The testimony is contradictory on this point, and we have no way of determining how the jury resolved this dispute.

The Commonwealth attempts to diminish this exchange by noting that a later witness "supported the officer's testimony when she testified that the only thing Appellant ever went to jail for was not paying child support." Id. at 25. However, even assuming that this later answer clarified the discrepancy, we remain unconvinced that the error did not contribute to the verdict. The jury could have concluded that J.W. genuinely believed that Appellant went to prison for molesting the others, but was merely mistaken as to why he was imprisoned.

Finally, we note that the trial court failed to inform the jury that the statements could not be considered for their substance. That failure, in our view, compounds the error to a significant degree and removes any doubt that Appellant is entitled to a new trial. We note that Appellant specifically objected to the inability to cross-examine J.W. about the contents of the video. In this vein, we note that the forensic interview may have been testimonial under Crawford v. Washington, 541 U.S. 36 (2004). See In re N.C., 74 A.3d 271 (Pa.Super. 2013) (holding that forensic interview conducted as part of criminal investigation qualified as a testimonial statement). If so, the

statements probably could not be introduced, as Appellant was deprived of his ability to cross-examine the witness about the statements.

While Confrontation Clause errors are subject to harmless error analysis, we believe that the concerns stated by the United States Supreme Court in Coy v. Iowa, 487 U.S. 1012 (1988) (holding Confrontation Clause violated where child in jury trial was blocked from viewing defendant by a screen), are particularly relevant in light of the trial court's opinion, which emphasized the victim's discomfort at facing her accuser as a reason to admit the interview. "Given [J.W.]'s reluctance to subject herself to questioning by [Appellant] (she did not attend the Preliminary Hearing due to emotional distress issues) . . . the forensic interview was useful to the jury in that it was her complete recitation of the events effectuated by a neutral questioner."  Trial Court Opinion, 12/4/17, at 6.  That is precisely what the Confrontation Clause forbids:

> The perception that confrontation is essential to fairness has persisted over the centuries because there is much truth to it. A witness "may feel quite differently when he has to repeat his story looking at the man whom he will harm greatly by distorting or mistaking the facts. He can now understand what sort of human being that man is." Z. Chafee, The Blessings of Liberty 35 (1956), quoted in Jay v. Boyd, 351 U.S. 345, 375–376, 76 S.Ct. 919, 935–936, 100 L.Ed. 1242 (1956) (Douglas, J., dissenting). It is always more difficult to tell a lie about a person "to his face" than "behind his back." In the former context, even if the lie is told, it will often be told less convincingly. The Confrontation Clause does not, of course, compel the witness to fix his eyes upon the defendant; he may studiously look elsewhere, but the trier of fact will draw its own conclusions. Thus the right to face-to-face confrontation serves much the same purpose as a less explicit component of the Confrontation Clause that we have had more

> frequent occasion to discuss[,] the right to cross-examine the accuser; both "ensur[e] the integrity of the fact-finding process." Kentucky v. Stincer, supra, 482 U.S., at 736, 107 S.Ct., at 2662. The State can hardly gainsay the profound effect upon a witness of standing in the presence of the person the witness accuses, since that is the very phenomenon it relies upon to establish the potential "trauma" that allegedly justified the extraordinary procedure in the present case. That face-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult. It is a truism that constitutional protections have costs.

Id. at 1019–20.

Additionally, Coy highlighted the dangers of accepting the Commonwealth's invitation to weigh the testimony by guessing how the jury may have sorted through the evidence: "An assessment of harmlessness cannot include consideration of whether the witness' testimony would have been unchanged, or the jury's assessment unaltered, had there been confrontation; such an inquiry would obviously involve pure speculation, and harmlessness must therefore be determined on the basis of the remaining evidence." Id. at 1021-22. Since this case reduced to a credibility assessment of J.W., there is no remaining evidence to examine.

Whether the recorded interview qualified as testimonial is beyond the scope of our decision. We emphasize that point to illustrate our belief that our consideration of the error in this case is not limited to words alone. Moreover, this aspect of the case raises grave concerns as to the wisdom of

applying the "right for any reason" doctrine.[6]  By viewing video of the interview, the jury was able to watch and observe J.W.'s demeanor, tone, mannerisms, and all other indicators that our judicial system holds important in evaluating credibility. The fact that a "neutral questioner" generated those answers is a reason to find error, not excuse it.  The trial court erred, and that error was not harmless beyond a reasonable doubt.  Appellant is entitled to a new trial.

Judgment of sentence vacated.  Case remanded for new trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/1/2019

_____

[6] We remind the Commonwealth and the trial court that the prior consistent statement exception does not open the door to introduction of all statements. ""It is generally required, however, that any corroboration offered, including prior consistent statements, be related to the impeachment they are to deny, rebut, or explain[.]"  Commonwealth v. Willis, 552 A.2d 682, 692 (Pa.Super. 1988) (en banc).  The Commonwealth did not attempt to tailor its introduction of the prior consistent statements to the purported impeachment.