**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 2 WAP 2018 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court entered May 26, 2017 at No. |
| | : | 633 WDA 2016, affirming the Order of |
| v. | : | the Court of Common Pleas of Erie |
| | : | County entered April 4, 2016 at No. |
| | : | CP-25-CR-0003575-2015. |
| DONALD J. MCCLELLAND, | : | |
| | : | ARGUED: October 24, 2018 |
| Appellant | : | |

**OPINION**

**JUSTICE DOUGHERTY**                              **DECIDED: JULY 21, 2020**

**I. Background**

In *Commonwealth ex rel. Buchanan v. Verbonitz*, 581 A.2d 172 (Pa. 1990) (plurality) ("*Verbonitz*"*)*, a five-Justice majority of this Court held hearsay evidence alone is insufficient to establish a *prima facie* case at a preliminary hearing. In the present case, a divided Superior Court recognized the *Verbonitz* holding, but did not follow it, despite acknowledging "the facts of *Verbonitz* are virtually indistinguishable from the case *sub judice*." *Commonwealth v. McClelland*, 165 A.3d 19, 31 (Pa. Super. 2017). The Superior Court articulated five reasons for its departure from *Verbonitz*: (1) the *Verbonitz* Court did not agree on a single rationale to support its holding; (2) the Superior Court, in *Commonwealth v. Ricker*, 120 A.3d 349 (Pa. Super. 2015) ("*Ricker I*"), *appeal dismissed as improvidently granted*, 170 A.3d 494 (Pa. 2017) (*per curiam*) ("*Ricker II*"), rejected the

position of the three-Justice *Verbonitz* plurality opining the presentation of hearsay violates confrontation rights; (3) the two-Justice *Verbonitz* minority relied on a substantive due process analysis contradicted by *Albright v. Oliver*, 510 U.S. 266 (1994) (plurality); (4) *Verbonitz* was decided before the 2013 amendments to Pa.R.Crim.P. 542(E); and (5) there was no procedural due process violation here.

We accepted review of the following issue:

> [W]hether the Superior Court panel failed to properly apply and follow the legal precedent set forth in *Commonwealth ex rel. Buchanan v. Verbonitz*, 581 A.2d 172, 174-76 (Pa. 1990) in which five (5) Justices held that "fundamental due process requires that no adjudication be based solely on hearsay evidence."

*Commonwealth v. McClelland*, 179 A.3d 2 (Pa. 2018) (*per curiam*).

Upon careful review, we hold the Superior Court erred to the extent it concluded hearsay evidence alone is sufficient to establish a *prima facie* case at a preliminary hearing. Accordingly, we reverse the Superior Court's decision in this matter and disapprove the Superior Court's prior decision in *Ricker I*, which similarly concluded hearsay evidence alone is sufficient to establish a *prima facie* case at a preliminary hearing.

## A. *Verbonitz*

In *Verbonitz*, the defendant (Buchanan) was arrested and charged with statutory rape, corruption of a minor and endangering the welfare of a child. At Buchanan's preliminary hearing, the seven-year-old female victim did not testify. Over defense objection, the Commonwealth presented the investigating officer who recounted what the victim told him about what Buchanan had allegedly done to her. On the basis of this hearsay alone, District Justice Edward Verbonitz determined a *prima facie* case had been established and bound the matter over for trial. Buchanan's subsequent writ of *habeas*

*corpus* was denied by the trial court, the Superior Court denied Buchanan's petition for review, and this Court granted allowance of appeal. The issue upon which we granted review was whether hearsay evidence alone is sufficient to establish a *prima facie* case.

This Court reversed in a plurality decision. *Verbonitz*, 581 A.2d at 175. Justice Larsen wrote the lead opinion, joined by Justice Zappala and Justice Papadakos, which concluded the Commonwealth failed to establish a *prima facie* case because it relied on inadmissible hearsay rather than legally competent evidence. *Id.* at 174. The lead opinion also reasoned Buchanan's right to confront the witnesses against him, guaranteed by the Pennsylvania Constitution, was violated when he was bound over for trial solely on the basis of hearsay testimony. *Id.* at 174-75. Justice Flaherty wrote a concurring opinion, joined by Justice Cappy, which agreed hearsay evidence alone is insufficient to establish a *prima facie* case, but deemed this conclusion "to be a requirement of due process." *Id.* at 175 (Flaherty, J., concurring). In Justice Flaherty's view, deciding the matter on due process grounds made it unnecessary for the Court to discuss a defendant's confrontation rights. *Id.* at 176. Justice Flaherty explained, "[i]t is sufficient to hold that a *prima facie* case cannot be established at a preliminary hearing solely on the basis of hearsay testimony." *Id.* (emphasis omitted).

Accordingly, although *Verbonitz* was a plurality decision, a five-Justice majority of the Court concluded the presentation of hearsay evidence, without more, is insufficient to establish a *prima facie* case at a preliminary hearing. The five-Justice majority also agreed, in determining hearsay alone was insufficient to establish a *prima facie* case, that

"fundamental due process requires that no adjudication be based solely on hearsay evidence." *Id.* at 174 (Larsen, J., lead opinion); *id.* at 176 (Flaherty, J., concurring).[1]

## B. Pennsylvania Rule of Criminal Procedure 542(E)

Paragraph (E) and the comments thereto were first promulgated by Order of January 27, 2011, and were amended by Order of April 25, 2013.[2]  Initially, Paragraph (E) provided:

> (E) Hearsay as provided by law shall be considered by the issuing authority in determining whether a *prima facie* case has been established.  Hearsay evidence shall be sufficient to establish any element of an offense requiring proof of the ownership of, non-permitted use of, damage to, or value of property.

Pa.R.Crim.P. 542(E) (2011 version).  At that time, the comment to the rule explained:

> Paragraph (E) was added to the rule in 2011 to clarify that traditionally our courts have not applied the law of evidence in its full rigor in proceedings such as preliminary hearings, especially with regard to the use of hearsay to establish the elements of a *prima facie* case.  *See* the Pennsylvania Rules of Evidence generally, but in particular, Article VIII.  Accordingly,

---

[1] Chief Justice Nix wrote a dissenting opinion, joined by Justice McDermott, opining the right to confront witnesses is not afforded to defendants at the preliminary hearing stage, and to afford Buchanan such a right "conflicts with the overriding interest this Commonwealth has shown in protecting child-witnesses in abuse cases."  *Verbonitz*, 581 A.2d at 177 (Nix, C.J., dissenting).  Justice McDermott also wrote a brief dissenting opinion, stating a preliminary hearing is not a trial in any sense of the word, and the majority's view would "make the first level of judicial process the final one."  *Id.* at 177 (McDermott, J., dissenting).

[2] We view Paragraph (E) in the context of Paragraph (D), which provides, "At the preliminary hearing, the issuing authority shall determine from the evidence presented whether there is a *prima facie* case that (1) an offense has been committed and (2) the defendant has committed it."  Pa.R.Crim.P. 542(D).  Additionally, Paragraph (C) of the Rule provides a defendant shall be present at a preliminary hearing except as otherwise provided in the rules, "and may:  (1) be represented by counsel; (2) cross-examine witnesses and inspect physical evidence offered against the defendant; (3) call witnesses on the defendant's behalf, other than witnesses to the defendant's good reputation only; (4) offer evidence on the defendant's own behalf, and testify; and (5) make written notes of the proceedings, or have counsel do so, or make a stenographic, mechanical or electronic record of the proceedings."  Pa.R.Crim.P. 542(C).

hearsay, whether written or oral, may establish the elements enumerated in paragraph (E). That enumeration is not comprehensive and hearsay is admissible to establish other matters as well. The presence of witnesses to establish these elements is not required at the preliminary hearing. *See also* Rule 1003 concerning preliminary hearings in Philadelphia Municipal Court.

Pa.R.Crim.P. 542(E), cmt. (2011 version).

In 2013, the second sentence of Paragraph (E) was amended, and the rule currently reads as follows:

> (E) Hearsay as provided by law shall be considered by the issuing authority in determining whether a *prima facie* case has been established. Hearsay evidence shall be sufficient to establish any element of an offense, **including, but not limited to, those** requiring proof of the ownership of, non-permitted use of, damage to, or value of property.

Pa.R.Crim.P. 542(E) (amending language emphasized). Concurrently, the comment to Paragraph (E) was also amended as follows:

> Paragraph (E) was ~~added to the rule~~ **amended** in ~~2011~~ **2013** to ~~clarify~~ **reiterate** that traditionally our courts have not applied the law of evidence in its full rigor in proceedings such as preliminary hearings, especially with regard to the use of hearsay to establish the elements of a *prima facie* case. *See* the Pennsylvania Rules of Evidence generally, but in particular, Article VIII. Accordingly, hearsay, whether written or oral, may establish the elements **of any offense.** ~~enumerated in Paragraph (E). That enumeration is not comprehensive and hearsay is admissible to establish other matters as well.~~ The presence of witnesses to establish these elements is not required at the preliminary hearing. ***But compare Commonwealth ex rel. Buchanan v. Verbonitz*, 525 Pa. 413, 581 A.2d 172 (Pa. 1990) (plurality) (disapproving reliance on hearsay testimony as the sole basis for establishing a *prima facie* case).** *See also* Rule 1003 concerning preliminary hearings in Philadelphia Municipal Court.

Pa.R.Crim.P. 542 (E), cmt. (deletions shown by strikethrough, additions in bold).

### C. *Ricker*

On July 2, 2014, Pennsylvania State Troopers Michael Trotta and Dana Gingerich were dispatched to David Edward Ricker's residence to investigate reports of a disturbance. Ricker engaged Trooper Trotta in an exchange of gunfire, witnessed by

Trooper Gingerich. Trooper Trotta and Ricker shot each other multiple times, but each survived. Ricker was arrested and charged with attempted murder, assault of a law enforcement officer and aggravated assault. At Ricker's preliminary hearing, neither trooper testified. Instead, the lead investigator, Douglas A. Kelley, testified regarding his investigation of the charges and played an audiotape of his interview with Trooper Trotta for the court. Ricker objected to the use of this hearsay evidence and requested a continuance to call Trooper Trotta and Trooper Gingerich on his behalf. The court overruled the objection, denied the request for a continuance, and bound the matter over for trial.

Ricker filed a pre-trial writ of *habeas corpus.* Therein, he argued it was improper for the court to conclude a *prima facie* case was established based only on hearsay evidence. The writ was denied and the Superior Court permitted Ricker's interlocutory appeal. The Superior Court subsequently affirmed the order of the trial court. The panel first noted, although some non-hearsay evidence was presented at Ricker's preliminary hearing, "none of that evidence was sufficient to establish the elements of the crimes charged." *Ricker I*, 120 A.3d at 356. The panel found "the evidence used to meet the material elements of the crimes charged came from the taped statement of Trooper Trotta[,]" and thus, "hearsay alone was used to prove a *prima facie* case[.]" *Id.* The Superior Court further held "Rule 542(E) is not in conflict with any binding precedent." *Id.* at 357. The court held if hearsay evidence can establish one or more elements of a crime, "it follows that, under the rule, it is sufficient to meet **all** of the elements." *Id.* (emphasis added). Thus, the court concluded the rule allows "hearsay evidence alone to establish a *prima facie* case." *Id.[3]*

---

[3] In a footnote, the court observed "Pennsylvania courts have used the terms '*prima facie*' and sufficient 'probable cause' interchangeably in the context of modern preliminary hearings." *Ricker I*, 120 A.2d at 355 n.1. Although not at issue in this case, we agree

Noting its conclusion did not resolve the case, the court considered Ricker's claim that the preliminary hearing procedure violated his confrontation rights under the United States and Pennsylvania Constitutions. The court reviewed "the historical underpinnings of the preliminary hearing, the reasons for the creation of the Pennsylvania and federal confrontation clauses, and the original public meaning of the respective confrontation clauses," and ultimately concluded it could find no "binding precedent that constitutionally mandates an accused be afforded the opportunity to confront and cross-examine a witness against him at a preliminary hearing based on the federal or state confrontation clause." *Id.* at 362-63. Additionally, the court noted Ricker "has not alleged that his due process rights were infringed[.]" *Id.* at 355.

Regarding *Verbonitz*, the court correctly observed "a majority of justices agreed that hearsay evidence alone was insufficient to establish a *prima facie* case at a preliminary hearing." *Id.* at 360. The court then noted, "[t]hree justices based their rationale on a constitutional confrontation right, whereas two justices grounded their decision on due process." *Id.* Acknowledging "[t]he comment to Rule 542 recognizes the tension between the rule and *Verbonitz*[,]" the panel nevertheless determined *Verbonitz* "is not binding and is valuable only insofar as its rationale can be found persuasive." *Id.* at 361.

This Court initially granted allowance of appeal in *Ricker* to consider whether "a defendant does not have a state and federal constitutional right to confront the witness against him at a preliminary hearing" and whether "a *prima facie* case may be proven by the Commonwealth through hearsay evidence alone[?]" *Commonwealth v. Ricker*, 135

_____

with Chief Justice Saylor's salient observation (in the context of discussing confrontation rights), "[d]efining the *prima facie* standard is not without its complications, particularly given the varying expressions of this Court." *Ricker II*, 170 A.3d at 503 (Saylor, C.J., concurring).

A.3d 175 (Pa. 2016) (*per curiam*). Ultimately, however, as noted, this Court dismissed the appeal as improvidently granted. *Ricker II*, 170 A.3d at 494.

### D. *McClelland*

The present appeal arises out of a criminal complaint filed by State Trooper Christopher Wingard, which accused appellant, Donald J. McClelland, of committing indecent assault, indecent exposure and corruption of minors against A.T., an eight-year-old child. Specifically, the complaint provided that, on August 3, 2015, A.T.'s parents reported to State Police that A.T. told them McClelland touched her face with his penis several months earlier. A.T. later provided additional details about the incident during an interview with a Children's Advocacy Center specialist, which led to the criminal charges. Relevant to the present appeal, the Commonwealth called Trooper Wingard as its sole witness at the preliminary hearing. Specifically, Trooper Wingard explained that he personally witnessed A.T.'s interview with the child specialist via a video link, and he recounted the contents of the interview to the magistrate, who bound the charges over for trial. McClelland filed a motion seeking a writ of *habeas corpus*, arguing that allowing the case to proceed to trial based solely on hearsay evidence violated his rights to confrontation and due process under the Pennsylvania and United States Constitutions. The trial court denied the motion, and McClelland filed an interlocutory appeal to the Superior Court, which that court permitted.[4]

The Superior Court affirmed. *McClelland*, 165 A.3d at 33. The court initially noted *Ricker* held the text of Rule 542(E) permits hearsay evidence to establish "any" element of an offense during a preliminary hearing and the rule does not violate a criminal

---

[4] The Superior Court determined it had jurisdiction because "extraordinary circumstances" existed to justify accepting the interlocutory appeal in *Ricker I*, and "the issue presented herein directly addresses an issue explicitly unresolved by *Ricker*[I;]" *i.e.*, whether permitting hearsay alone to establish a *prima facie* case at a preliminary hearing violates notions of due process. *McClelland*, 165 A.3d at 22-23.

defendant's state or federal constitutional right to confront witnesses. *Id.* at 22. The court explained *Ricker* left unresolved the question of "whether notions of due process would require a different result." *Id.* In addressing that issue, the court first considered the threshold question of whether due process protections apply to preliminary hearings, given that preliminary hearings are purely statutory in nature. The court observed, although there is no constitutional right to a preliminary hearing, the Commonwealth elected to act in this field by amending Article I, Section 10 of the Pennsylvania Constitution to permit prosecutions to be initiated by the filing of criminal informations, and 42 Pa.C.S. §8931(b) later provided the statutory authorization giving effect to the amendment. The court noted these actions prompted our Court to promulgate "rules governing the initiation of criminal charges, including Rule 542 and its hearsay provision," and triggered the application of due process protections to the procedures implementing the statutory right to a preliminary hearing. *Id.* at 26.

Next, noting appellant did not specify whether he was raising a procedural or a substantive due process claim, the court considered each type of due process and found substantive due process to be inapplicable, requiring the claim to be analyzed under the rubric of procedural due process. Specifically, the court emphasized that substantive due process under the Fourteenth Amendment to the United States Constitution "'requires state criminal trials to provide defendants with protections implicit in the concept of ordered liberty.'" *Id.* at 27, *quoting Danforth v. Minnesota*, 552 U.S. 264, 270 (2008) (emphasis omitted). As the United States Constitution does not require the United States government to hold a preliminary hearing for criminal defendants, the court reasoned the right to a preliminary hearing was not "implicit in the concept of ordered liberty," and, thus, it concluded substantive due process does not apply. *Id.* at 28, *citing Albright*, *supra*

(majority of the Court finding no substantive due process right to be free from criminal prosecution except upon probable cause).

Having determined the "appeal sounds in procedural due process[,]" the court next examined whether the procedures afforded to appellant in connection with his preliminary hearing were sufficient. *Id.* at 29. In so doing, the court noted the government may not deprive individuals of life, liberty, or property without due process, including, *inter alia*, "'adequate notice, the opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case.'" *Id.*, *quoting Commonwealth v. Turner*, 80 A.3d 754, 764 (Pa. 2013). The court observed appellant "failed to specify what interest is at stake[,]" but construed his argument as alleging "the supplied procedure is 'fundamentally inadequate to vindicate' his rule-based right to confront" the witnesses against him "since the Commonwealth can elect to render it meaningless" by relying solely on the presentation of hearsay evidence. *Id.* at 29-30. The court went on to reject this argument, emphasizing that, in reality, appellant's concern centered on his inability to test witness credibility, which the court opined is irrelevant at a preliminary hearing because cross-examination does not enhance the reliability of the *prima facie* determination. Moreover, the court mused, even assuming the trial court erred in admitting the hearsay evidence, the error would be irrelevant if appellant were found guilty beyond a reasonable doubt at trial, and it would not lead to a permanent loss of liberty if he were acquitted. Accordingly, the court concluded appellant's procedural due process rights were not violated, as he failed to demonstrate that defendants subjected to a preliminary hearing are entitled to procedural due process protections beyond notice, the opportunity to be heard, and the chance to defend themselves before a fair and impartial jury, all of which were provided in this case.

The court also addressed appellant's argument based upon Justice Flaherty's concurring opinion in *Verbonitz*, which opined the hearsay statement of a police officer was insufficient by itself to establish a *prima facie* case because it violated notions of due process. The court interpreted Justice Flaherty's concurrence as expressing a view that "due process requires an adversarial probable cause determination in order to hold a person for trial," which the court characterized as sounding in substantive due process. *McClelland*, 165 A.3d at 31. Citing *Albright*, *supra*, the court again noted the United States Supreme Court has rejected the notion that substantive due process extends to preliminary hearings, and it explained that, in any event, the preliminary hearing is not a final adjudication of "life, death, liberty, and property[.]" *Id.* While the court acknowledged "significant liberty restraints may result from requiring an individual to stand trial," it highlighted that "[t]he Fourth Amendment, not due process, applies to those pretrial restraints." *Id.* at 32. The court further noted *Verbonitz* was decided prior to the amendments to Rule 542, and, thus, it observed that Justice Flaherty's concurrence "could not account for later changes to that procedure." *Id.*

In light of the foregoing, the court concluded appellant's due process rights were not violated. However, the court emphasized its decision was "predicated on the facts, with consideration of [a]ppellant's ability to cross-examine the primary investigator." *Id.* The court noted appellant was able to cross-examine the investigator, who witnessed A.T.'s interview, regarding the circumstances of that statement, and appellant "was free to challenge the plausibility and reliability of the hearsay when addressing the *prima facie* question." *Id.* The court stressed its decision "does not suggest that the Commonwealth may satisfy its burden by presenting the testimony of a mouthpiece parroting multiple levels of rank hearsay[,]" clarifying "there is no reason to think that magistrates do not already apply the similar Fourth Amendment probable cause standard used in other

contexts where decisions are made on the basis of hearsay." *Id.* at 32-33, *citing Commonwealth v. Smith*, 784 A.2d 182 (Pa. Super. 2001) (probable cause determination for issuance of search warrant permits consideration of the basis of knowledge of persons supplying hearsay and various indicia of reliability and unreliability).

Judge Strassburger dissented, opining that procedural "due process requires the Commonwealth to produce something more than just hearsay at a preliminary hearing[.]" *Id.* at 33. (Strassburger, J., dissenting). In reaching this conclusion, Judge Strassburger first considered the liberty interests at stake and observed that, although the only restraint on liberty in the instant case was requiring appellant to stand trial, the liberty interest implicated in other similar cases may be more substantial, such as where a defendant is held without bail or cannot afford bail. Judge Strassburger contemplated the sufficiency of the procedure afforded to appellant and agreed squarely with the position advanced in Justice Flaherty's concurring opinion in *Verbonitz* that a "'*prima facie* case cannot be established at a preliminary hearing solely on the basis of hearsay testimony.'" *Id.* at 34, *quoting Verbonitz*, 581 A.2d at 175 (Flaherty, J., concurring). Highlighting the fact that, in the instant case, Trooper Wingard gave hearsay testimony regarding what he heard the victim tell the Child Advocacy Center interviewer, rather than testifying regarding his own interview with the victim, Judge Strassburger concluded appellant's due process rights were violated, and he cautioned that "[p]ermitting the Commonwealth to present testimony only from the trooper investigating this case is the beginning of a path down a slippery slope." *Id.*

## II. Arguments

### A. Appellant

Appellant's bedrock assertion is that the five-Justice *Verbonitz* holding — that hearsay alone is insufficient to establish a *prima facie* case at a preliminary hearing — is

binding precedential authority from this Court, which the Superior Court had neither the prerogative to ignore nor the power to overrule. Appellant begins by quoting the *Verbonitz* Court's statement of the issue upon which it granted review: "'The issue presented in this case is whether hearsay testimony presented at a preliminary hearing regarding a victim's account of an alleged criminal incident, which is the sole evidence presented by the Commonwealth, is sufficient to establish a *prima facie* case.'" Appellant's Brief at 9-10, *quoting Verbonitz*, 581 A.2d at 173. Appellant advances that "[i]n the lead and concurring opinions, a majority of the Court, five (5) Justices, held that the trial court erred by permitting a *prima facie* case to be based solely on victim hearsay," and consequently, the *Vebonitz* Court ordered "'the charges . . . dismissed and the appellant . . . discharged.'" *Id.* at 10, *quoting Verbonitz*, 581 A.2d at 175.

Appellant asserts the *Verbonitz* holding was not *dicta* but an "'actual determination[] in respect to litigated and necessarily decided questions[.]'" *Id.*, *quoting In re L.J.*, 79 A.3d 1073, 1081 (Pa. 2013) (additional bracketed text omitted). Appellant claims, moreover, that in cases where no majority rationale exists for a decision of this Court, the **result** of the decision is nevertheless precedential. *Id.* at 11, *citing, e.g., Commonwealth v. Haefner*, 373 A.2d 1094, 1095 (Pa. 1977) (where a majority of the members of this Court agree in a result, the decision is precedential). Appellant insists the "Superior Court's duty here, and in *Ricker* [*I*]," was simply to "follow this Court's holding in *Verbonitz*," rather than "independently analyze [the] issue[]" and reach an opposite result or conclusion. *Id.* at 11-12. Appellant additionally maintains the Superior Court erred here (and in *Ricker I*) to the extent it concluded only three Justices in *Verbonitz* based their result on an application of due process concerns. Appellant contends five members of the *Verbonitz* Court joined in the due process rationale, and thus "*Verbonitz* was binding on the Superior Court both as to the result and as to the rationale." *Id.* at 13.

Appellant also claims the Superior Court erred in concluding the *Verbonitz* holding was expressly overruled by this Court's adoption of amended Rule 542(E). Appellant asserts the Superior Court here and in *Ricker* incorrectly determined Rule 542(E) provides that hearsay can be used to prove **all** elements of a *prima facie* case and thus, that hearsay evidence alone is sufficient to establish a *prima facie* case. Appellant argues the rule addresses when hearsay may be admissible, but by its plain terms, does not address "if and when hearsay evidence, by itself, may be sufficient to establish a *prima facie* case." *Id.* at 14-15 (emphasis omitted). Appellant acknowledges the language of the rule may be ambiguous, *see id.* at 16, *citing Ricker II*, 170 A.3d at 506 (Saylor, C.J., concurring) ("the applicable rules are not models of clarity"), but submits that "a lower court has no authority to overrule a decision of a higher court based on its interpretation of a subsequent ambiguous statement by the higher court." *Id.*, *citing Bosse v. Oklahoma*, __ U.S. __, 137 S.Ct. 1, 2 (2016) (*per curiam*) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing validity.").

Appellant lastly maintains the Superior Court here and in *Ricker I* failed to properly consider and apply the rules of statutory construction in determining that Rule 542 permits all hearsay to be admissible and that hearsay alone is sufficient to establish a *prima facie* case.[5] Among other things, appellant argues the court in both cases erred to the extent it failed to properly interpret the phrase "[h]earsay as provided by law" in Rule 542(E) as "a limiting principle, referring to other statutes and past decisions." *Id.* at 20. According

---

[5] Neither the panel here nor in *Ricker I* expressly analyzed Rule 542(E) under the principles of statutory construction and interpretation. The *Ricker I* court concluded, nevertheless, that a "plain reading" of the Rule permits hearsay to establish "any material element of a crime," and thus, "it follows that, under the rule, [hearsay] is sufficient to meet all of the elements." *Ricker I*, 120 A.3d at 357.

to appellant, "[c]learly, the most significant past decision is *Verbonitz* which specifically held that a *prima facie* case may not be based entirely on hearsay." *Id.*

### B. Commonwealth

In response, the Commonwealth first asserts the Superior Court lacked jurisdiction to entertain the interlocutory appeal from the trial court's denial of a request for *habeas corpus* relief because there were no "exceptional circumstances" present. Commonwealth's Brief at 1. The Commonwealth asserts exceptional circumstances exist, *inter alia*, "'where an issue of great importance is involved.'" *Id.* at 2, *quoting Commonwealth v. Reagan*, 479 A.2d 621, 622 (Pa. Super. 1984) (internal citation and quotation omitted). However, while acknowledging the Superior Court determined "important" constitutional questions were implicated in the appeal, the Commonwealth avers that "important is not enough; issues must be of great importance to warrant [interlocutory] review." *Id.* The gravamen of the Commonwealth's argument is that "[a]ppellant has not lost any constitutional rights[,]" because he still has the full panoply of trial rights "ahead of him." *Id.* Thus, despite the fact this Court granted discretionary review of the discrete issue involving the precedential effect of *Verbonitz*, the Commonwealth asserts the instant appeal should be quashed.

The Commonwealth next argues the Superior Court correctly treated *Verbonitz* as a non-binding plurality opinion. Quoting Justice Flaherty's concurring opinion in which he described Justice Larsen's lead opinion as a "plurality[,]" the Commonwealth asserts "[t]he Justices who decided the *Verbonitz* case agree that it is a plurality and no amount of legal wrangling and twisting by the [a]ppellant will change that." *Id.* at 3, *quoting Verbonitz*, 581 A.2d at 175 (Flaherty, J., concurring). "'Plurality opinions, by definition, establish no binding precedent for future cases.'" *Id.*, *quoting Commonwealth v. Brown*, 872 A.2d 1139, 1165 (Pa. 2005) (Castille, J., concurring). The Commonwealth therefore

concludes the Superior Court committed no error in declining to find the *Verbonitz* reasoning persuasive.

Moreover, in the Commonwealth's view, appellant's argument regarding the proper statutory interpretation of the phrase "hearsay as provided by law" is "illogical[;]" *i.e.*, the phrase does not mean "that hearsay can be used except for the limits placed by *Verbonitz.*" *Id.* at 5. Instead, the Commonwealth asserts, "the plain meaning of the words is that hearsay, as defined by the Rules of Evidence, can be used to meet the *prima facie* burden . . . at the preliminary hearing." *Id.* The Commonwealth further argues any interpretation of Rule 542(E) that incorporates the *Verbonitz* plurality rationale would directly contradict the rule's command that "'Hearsay evidence shall be sufficient to establish any element of an offense.'" *Id.*, *quoting* Pa.R.Crim.P. 542(E). The Commonwealth insists, "[e]ither *Verbonitz* controls or Rule 542([E]) controls; they cannot be reconciled." *Id.*

The Commonwealth maintains that, in any event, "[u]sing hearsay alone to prove a *prima facie* case does not violate substantive due process." *Id.* It notes that preliminary hearings are not constitutionally mandated; however, it also recognizes that once a state decides to institute such a proceeding "then procedural due process must apply." *Id.* at 6. The Commonwealth insists appellant received all the process that was due — he received adequate notice, the opportunity to be heard, and the chance to defend himself before a fair and impartial tribunal. Regarding cross-examination, the Commonwealth notes appellant, in fact, cross-examined Trooper Wingard at some length, and notes the language of Pa.R.Crim.P. 542(C) allows only that a "defendant . . . **may** cross-examine witnesses[.]" *Id.* at 8, quoting Pa.R.Crim.P. 542(C) (emphasis supplied by the Commonwealth). The Commonwealth suggests Rule 542 does not give an accused the right to cross-examine his accusers, but merely provides an accused the right to cross-

examine whatever witnesses are presented at the hearing. Finally, the Commonwealth argues that hearsay in the preliminary hearing context is similar to that permitted in the context of seeking a search warrant, and submits the information provided by Trooper Wingard was reliable since his basis of knowledge was probed and it sufficiently supported the reliability of the hearsay evidence.

### C. *Amici*

*Amici Curiae*, Attorney General Josh Shapiro and the Pennsylvania District Attorneys Association ("*amici*") have jointly filed a brief on behalf of the Commonwealth. They assert the due process clause permits a preliminary hearing judge to hold a case for court and detain a defendant pending trial on the basis of hearsay evidence alone. In support, *amici* first suggest *Verbonitz* was unmistakably a plurality decision, a point they claim Justices Larsen and Flaherty made "clear" in their separate writings acknowledging their separate rationales — the "lead opinion" was based on "the constitutional rights of confrontation and cross-examination" while the concurrence "would resolve the case on due process grounds[.]" *Amici* Brief at 5 (internal quotations and citation omitted). Nevertheless, *amici* recognize Justices Larsen and Flaherty both cited due process principles addressed in *Commonwealth, Unemployment Compensation Bd. of Review v. Ceja*, 427 A.2d 631 (Pa. 1981) ("*Ceja*"). *Amici* characterize *Ceja* as an "unrelated case[,]" and assert the citations to *Ceja* in the separate *Verbonitz* expressions amounted to "general language[.]" *Amici* Brief at 5 n.1.[6] A*mici* additionally note the comment to Rule

---

[6] The precise language from *Ceja* quoted by both the *Verbontiz* lead and concurring opinions was "'[f]undamental due process requires that no adjudication be based solely on hearsay evidence.'" *Verbonitz*, 581 A.2d at 174 (Larsen, J., lead opinion), *quoting Ceja*, 427 A.2d at 647; *Verbonitz*, 581 A.2d at 176 (Flaherty, J., concurring), *quoting Ceja*, 427 A.2d at 647.

542(E) describes *Verbonitz* as a "plurality" and suggests the "weight of authority, both federal and state, clearly supports the use of hearsay alone to find a *prima facie* case or detain a defendant." *Id.* at 7-9, *citing, inter alia, United States v. Delker*, 757 F.2d 1390 (3rd Cir. 1985) (rejecting claim hearsay may not be used at pretrial detention hearing to demonstrate defendant committed crime charged).

*Amici* then pivot to this Court's authority to "create sensible rules for the use of hearsay evidence at preliminary hearings." *Id.* at 10. Acknowledging "the role of hearsay has proved to be a vexing problem in Pennsylvania jurisprudence" that "remains unresolved after decades of litigation and rulemaking[,]" and that previous approaches have "too often tried to be quantitative[,]" *amici* suggest "the question should be addressed qualitatively: what specific kinds of hearsay are reliable enough to move the case forward to trial?" *Id.* at 10-11. *Amici* then propose "three types of evidence that are easily defined and offer elements of reliability that justify their admission for preliminary hearing purposes": 1) audio/video recordings; 2) testimony by an officer who actually participated in the interview of a witness; and 3) expert reports. *Id.* at 11-14. *Amici* ask this Court to amend the rules specifically to permit hearsay evidence of this nature.

*Amicus Curiae*, the Defender Association of Philadelphia ("DAP"), has filed a brief on behalf of appellant. DAP asserts that both the lead and concurring opinions in *Verbonitz* opined that hearsay does not constitute legally competent evidence and thus, five Justices agreed hearsay alone, as a matter of due process, cannot be sufficient to make out a *prima facie* case at a preliminary hearing. DAP argues *Verbonitz* is precedential under each of three separate doctrines: 1) "result" *stare decisis*; 2)

"narrowest ground of agreement" *stare decisis*; and 3) "false plurality" analysis. DAP's Brief at 6.

DAP explains "result" *stare decisis* requires any "result espoused by a majority of this Court (no matter how many separate opinions are issued to establish this) should be controlling in substantially identical cases." *Id.* at 8 (emphasis deleted), *citing* Linda Novak, Note, *The Precedential Value of Supreme Court Plurality Decisions*, 80 COLUM. L. REV. 756, 779 (1980); *Rappa v. New Castle County*, 18 F.3d 1043, 1061 n.26 (3rd Cir. 1994), ("[I]t seems clear that lower courts must adhere at the minimum to the principle of 'result' stare decisis, which mandates that any specific result espoused by a clear majority of the Court should be controlling in substantially identical cases. The absence of a clear majority rationale supporting the result may give a lower court some flexibility to formulate a justifying rule[;] it does not, however, justify a court in embracing a line of reasoning that will lead to a contrary result. . . . Adherence to 'result' stare decisis is essential if principles of certainty and uniformity are to have any meaning at all . . .."), *quoting* Novak, *supra*.

DAP further claims "*Verbonitz* is actually a case in which, as a result of Justice Larsen's Opinion and Justice Flaherty's Opinion, a majority of the Court **did** agree both on the result (*i.e.* the Commonwealth cannot establish a *prima facie* case based solely on hearsay evidence) **and** one common rationale supporting the result (*i.e.* due process protections)." *Id.* at 9 (emphasis supplied by DAP). DAP argues "[this] circumstance triggers the more commonly invoked *stare decisis* 'narrowest grounds of agreement' doctrine, which treats a case as binding authority on the narrowest of grounds upon which a majority of the Court agree on both a result and its supporting rationale." *Id.*, *citing Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a

case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds[.]") (additional citations and quotation marks omitted).[7]

DAP also advances the argument that *Verbonitz* can be seen as "what some legal commentators refer to as a 'false plurality'." *Id.* at 11, *citing Plurality Decisions and Judicial Decision Making*, 94 HARV. L. REV. 1127 (1981).

> The key characteristic that makes plurality decisions troublesome is the presence of at least two distinct rationales that will justify the result reached in a case, neither of which commands a majority. In some cases that are nominally plurality decisions, however, a majority of the Court does support a rationale sufficient to justify the holding. Such cases take the form of plurality decisions only because some justices go on to state additional ideas. Thus, when proposition *A* is sufficient to justify the holding, and either the plurality opinion supports *A* while the minority opinion supports both *A* and *B,* or the plurality opinion supports *A* and *B* while the minority opinion supports *A*, a 'false plurality' decision results.

*Id.*, *quoting Plurality Decisions and Judicial Decision Making*, 94 HARV. L. REV. at 1130.

DAP argues a "false plurality" decision is more akin to a majority decision than a plurality decision, but due to the structure of the opinion, the majority agreement is somewhat hidden. According to DAP, "[f]or *stare decisis* purposes, the structure of a

---

[7] DAP also relies on legal commentary to explain the doctrine:

> It is easy to isolate the narrowest possible ground in those situations where the plurality [lead opinion] relies on rationale A in support for the result, and the concurrence clearly agrees on the applicability of that rationale, but also goes a step further and espouses rationale B as well. In such cases the plurality rationale may be fairly regarded as the narrowest ground embodying the reasoning of a majority of the Court, and that rationale should be binding on lower courts for future cases.

DAP's Brief at 10 n.7, *quoting* Novak, *supra* at 763.

'false plurality' should be pierced," and its points of agreement should be seen as a majority decision of the Court. *Id.* at 12. DAP contends *Verbonitz* is just such a decision because "five Justices agreed (although spread across two Opinions) that a preliminary hearing *prima facie* case based solely on hearsay evidence violates due process." *Id.*

Moreover, DAP disagrees with the Superior Court's suggestion that the continuing validity of *Verbonitz* has been undercut by the current version of Rule 542(E) and the Comment thereto. First, DAP notes the conclusions of Justices Larsen and Flaherty in *Verbonitz* are constitutionally-based, not rule-based. In any event, DAP observes the Comment includes specific reference to *Verbonitz* as "disapproving" of "reliance on hearsay testimony as the sole basis for establishing a *prima facie* case." *Id.* at 14, *citing* Pa.R.Crim.P. 542(E), cmt. Thus, DAP concludes, "[r]ather than being undercut by Rule [542(E)]," *Verbonitz* has been "included in" and "fortified by" the rule. *Id.*

### III. Analysis

Our Court has articulated the following standard and scope of review: "Ordinarily, an appellate court will review a grant or denial of a petition for writ of *habeas corpus* for abuse of discretion, but for questions of law, our standard of review is *de novo,* and our scope of review is plenary." *Commonwealth v. Judge*, 916 A.2d 511, 521 n.13 (Pa. 2007) (citations omitted).[8] As stated, the precise question presented in this appeal is one of law, *i.e.,* whether the panel below failed to properly apply and follow *Verbonitz*.

### A. Precedential Value of *Verbonitz*

---

[8] An order denying or granting a writ of *habeas corpus* is interlocutory. *See e.g. Commonwealth v. LaBelle*, 612 A.2d 418 (Pa. 1992). Although the Commonwealth now contests the Superior Court's determination that interlocutory appellate review was appropriate in this case, that conclusion is beyond the scope of the issue upon which *allocatur* was granted. Thus, we do not consider it.

In *Verbonitz*, the Court determined the Commonwealth failed to establish a *prima facie* case at a preliminary hearing. We have little difficulty in stating with certainty that five Justices in *Verbonitz* agreed a *prima facie* case cannot be established by hearsay evidence alone, and the common rationale among those Justices involved due process considerations. In the lead opinion, styled as the "Opinion of the Court," Justice Larsen wrote: "In this case it is clear that the Commonwealth did not meet its burden. As Justice Flaherty stated in his concurring opinion in [*Ceja*,] 'fundamental **due process** requires that no adjudication be based solely on hearsay evidence.'" *See Verbonitz*, 581 A.2d at 174, *quoting Ceja*, 427 A.2d at 647 (Flaherty, J., concurring) (emphasis added). Because hearsay "does not constitute legally competent evidence[,]" Justice Larsen explained, "the Commonwealth has failed to establish *prima facie* that a crime has been committed and that Buchanan committed that crime." *Id.* Justice Larsen immediately continued, "**Additionally**, a criminal defendant has a right to confront and cross-examine the witnesses against him: this right being secured by the United States Constitution; the Pennsylvania Constitution; and the Pennsylvania Rules of Criminal Procedure." *Id.* (emphasis supplied, footnotes omitted). Justice Larsen stated, "[a] preliminary hearing is an adversarial proceeding which is a critical stage in a criminal prosecution[,]" and concluded Buchanan was denied his constitutional rights to confrontation and cross-examination. *Id.* at 175. Justice Larsen's opinion was joined by Justice Zappala and Justice Papadakos.

In his concurring opinion, Justice Flaherty opined he "reach[ed] the same conclusion through an analysis somewhat different from that employed by the plurality." *Id.* at 175 (Flaherty, J. concurring). Justice Flaherty observed that to "establish a *prima*

*facie* case, the Commonwealth must produce evidence which presents sufficient probable cause to believe that the person charged has committed the offense stated." *Id.* (internal quotation marks and citation omitted). Noting the United States Supreme Court has "implied in dictum, but has not held, that other rights, such as the right to confrontation and the right to cross-examination, are constitutionally protected at the preliminary hearing[,]" Justice Flaherty opined those considerations "do not answer the question presented to us: whether hearsay testimony, **standing alone**, may constitute sufficient evidence to establish a *prima facie* case at a preliminary hearing." *Id.* (emphasis in original). Justice Flaherty "conclude[d] that it cannot[,]" and "deem[ed] this to be a requirement of due process." *Id.* Justice Flaherty then cited his *Ceja* concurrence for the proposition that "fundamental **due process** requires that no adjudication be based solely on hearsay." *Id.* at 176 (emphasis added). Accordingly, we conclude that although *Verbonitz* is nominally a plurality decision, it is clear that a five-member majority of the Court held hearsay alone is insufficient to establish a *prima facie* case at a preliminary hearing because to do so violates principles of fundamental due process.

### B. The Validity of *Verbonitz* Following Adoption of Rule 542(E)

While the subsequent promulgation of Rule 542(E) in 2011 permitted the use of hearsay in preliminary hearings, appellant challenges the instant panel's interpretation of the rule as permitting unlimited use of hearsay, as announced in *Ricker I*, as long as such use is not in the nature of layers of rank hearsay. We begin by observing that we apply the Statutory Construction Act, 1 Pa.C.S. §§1501-1991, when interpreting the Rules of Criminal Procedure. *See* Pa.R.Crim.P. 101(C) ("To the extent practicable, these rules shall be construed in consonance with the rules of statutory construction.").

Turning to the interpretation of Rule 542(E) as set forth in *Ricker I*, we first note the rule, as originally set forth in 2011, expressly stated hearsay as provided by law "shall be sufficient to establish any element of an offense requiring proof of the ownership of, non-permitted use of, damage to, or value of property." *See* Pa.R.Crim.P 542(E) (2011 version). The rule, by its plain language, was of limited scope. It permitted "[h]earsay as provided by law" to be "considered" and offered primarily to establish elements of property offenses. The rule, in part, relieved victims of property offenses from attending an accused's preliminary hearing simply to establish facts about the ownership of, non-permissive use of, damage to, or value of stolen property. Notably, at that time, the rule was in essential harmony with the *Verbonitz* lead and concurring opinions, which concluded legally competent evidence, and not hearsay alone, was required to establish the elements which must be proven at a preliminary hearing. Thus, initial promulgation of subsection (E), to an extent, formalized a procedure many preliminary hearing courts were already following — allowing some hearsay to prove some elements when other legally competent, non-hearsay evidence was also presented, in accordance with the conclusion of the five *Verbonitz* justices who opined hearsay evidence alone is not sufficient to establish a *prima facie* case. *See, e.g. Commonwealth v. O'Shea-Woomer*, 8 Pa.D.&C.5th 178, 184 (Lanc. Co. 2009) (admitting hearsay medical report at preliminary hearing where other non-hearsay evidence was presented to establish *prima facie* case, and noting "hearsay evidence **alone** may not be the basis for establishing a prima facie case in a preliminary hearing") (emphasis in original). *See also Commonwealth v. Camacho*, 2007 Pa.Dist.&Cnty. (Ches. Co.) (granting pre-trial writ of *habeas corpus* on

basis Commonwealth presented hearsay evidence alone, concluding "the Commonwealth has failed to present a *prima facie* case by competent evidence").

Rule 542(E), however, was expanded in 2013. Implicit in our consideration of the Superior Court's decision below is the scope of the expanded rule, and in particular, whether, as the Superior Court held in *Ricker I* and suggested here, the rule supplants *Verbonitz*, and permits **all** elements of **all** offenses to be established at a preliminary hearing solely on the basis of hearsay evidence. We determine Rule 542(E), though not the model of clarity, does not permit hearsay evidence alone to establish all elements of all crimes for purposes of establishing a *prima facie* case at a defendant's preliminary hearing.

Initially, although the word "any" is an adjective which can mean "one, some, every, or all," THE AMERICAN HERITAGE COLLEGE DICTIONARY (3d ed. 1993), the precise meaning of its usage depends largely on the context in which it is employed. *See Snyder Bros. v. Pa. PUC*, 198 A.3d 1056, 1073 (Pa. 2018) ("we consider the meaning of the term 'any' to be wholly dependent on the context in which it is used in the particular statute under review"); *see also JP Morgan v .Taggart*, 203 A.3d 187, 193-94 (Pa. 2019) (same). "'A statute is ambiguous when there are at least two reasonable interpretations of the text.'" *Id.* at 194, *quoting A.S. v. Pa. State Police*, 143 A.3d 896, 905-06 (Pa. 2016). Because the alternative interpretations of "any" offered by the parties are reasonable, rendering its meaning ambiguous, we resort to the canons of statutory construction. Those canons require us to consider matters beyond the statutory language, including the occasion and necessity of the statute or rule, the mischief to be remedied, and the object to be attained.

*See* 1 Pa.C.S. §1921(c). In addition, we read the sections of Rule 542 together, and we construe them to give effect to all of the rule's provisions. *Id.* at §1921(a).

Under Rule 542(E), hearsay shall be sufficient to prove any element. The word "any" is used to describe an element (or elements) of an offense, including, but not limited to, those for which proof of ownership of, non-permitted use of, damage to, or value of property is required. Thus, contextually under the rule, the understanding of "any" is intended to mean an indefinite or unknown quantity. Nevertheless, although the rule suggests the quantity of "any" may be indefinite, that quantity is delimited by the phrase "[h]earsay **as provided by law** shall be considered" contained in the first sentence of subsection (E). *See* Rule 542 (E) ("Hearsay as provided by law shall be considered by the issuing authority in determining whether a *prima facie* case has been established.") (emphasis added). Some meaning must be ascribed to every word in a statute (or rule, in the present case), and there is a presumption that disfavors interpreting language as mere surplusage. 1 Pa.C.S. §1922(2) ("[i]n ascertaining the intention of the General Assembly in the enactment of a statute," a court may presume "the General Assembly intends the entire statute to be effective and certain"); *S & H Transp., Inc. v. City of York*, 140 A.3d 1, 7 (Pa. 2016) (in construing language of statute, court must give effect to every word, and may not assume any words were intended as mere surplusage).

Hearsay is generally inadmissible in legal proceedings unless it falls under a recognized exception. *Commonwealth v. Ali*, 10 A.3d 282, 315 (Pa. 2010). The critical term in the phrase "hearsay as provided by law" is the word "provided," which is a conjunction meaning "on the condition [of]." THE AMERICAN HERITAGE COLLEGE DICTIONARY (3d ed. 1993). Thus, the phrase "hearsay as provided by law" could

reasonably mean hearsay as defined by law, *i.e.* an out-of-court statement presented as evidence of the truth of the matter asserted. *See, e.g., Castellani v. Scranton Times, L.P.*, 124 A.3d 1229, 1239 (Pa. 2015), *quoting* Pa.R.E. 801(c) (defining hearsay as out-of-court statement made by declarant that party "offers in evidence to prove the truth of the matter asserted in the statement").

Nevertheless, appellant's argument that the phrase "as provided by law" is a limiting principle is also reasonable. Because "as provided by law" could alternatively mean "contingent on" or "subject to" law, the phrase can be a bulwark against reading the rule as a sweeping pronouncement permitting hearsay alone to prove all elements of all offenses at a preliminary hearing. Indeed, although the 2013 amendment expanded the potential offenses for which hearsay shall be permitted, the amended comment specifically added a comparison citation to *Verbonitz,* which parenthetically highlighted the contrasting conclusion disapproving the use of hearsay alone to establish a *prima facie* case at a preliminary hearing. *See Rossi v. Commonwealth, Bureau of Driver Licensing*, 860 A.2d 64, 66 (Pa. 2004) ("individual statutory provisions must be construed with reference to the entire statute of which they are a part"), *citing* 1 Pa.C.S. §1922(2); *see also Commonwealth v. Lurie*, 569 A.2d 329, 331 (Pa. 1990) ("[S]ections of statutes are not to be isolated from the context in which they arise such that an individual interpretation is accorded one section which does not take into account the related sections of the same statute."), *quoting Commonwealth v. Revtai*, 532 A.2d 1, 5 (Pa. 1987).

As the foregoing analysis reveals, the amended rule does not evince an articulated intent to overrule *Verbonitz* or re-affirm it; instead, subsection (E) is intended to allow

some use of hearsay. The plain language of the rule does not state a *prima facie* case may be established solely on the basis of hearsay, despite the Superior Court's contrary interpretation. Significantly, the rule as written is open to reasonable yet opposing interpretations. Indeed, given that the word "any" and the phrase "as provided by law" are ambiguous, particularly in light of the comment citing *Verbonitz*, we now prudentially apply the "canon of constitutional avoidance," which instructs "we are bound to interpret a statute, where possible, in a way that comports with the constitution's terms." *Commonwealth v. Veon*, 150 A.3d 435, 443 (Pa. 2016). In other words, "when a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." *Id.*, *quoting Harris v. United States*, 536 U.S. 545, 555 (2002).[9]

"The primary reason for the preliminary hearing is to protect an individual's right against unlawful arrest and detention." *Commonwealth ex rel. Maisenhelder v. Rundle*, 198 A.2d 565, 567 (Pa. 1964). The preliminary hearing "seeks to prevent a person from being imprisoned or required to enter bail for a crime which was never committed, or for a crime with which there is no evidence of his connection." *Id.* Our precedents make

---

[9] That grave and doubtful constitutional concerns are evident is beyond peradventure; however, given the limited question on which we granted review, any discussion herein of due process, confrontation rights and whether the probable cause and *prima facie* standards are synonymous, would, of necessity, be *dicta*. Moreover, notwithstanding Chief Justice Saylor's criticisms of the due process analysis in *Verbonitz*, he agrees this case is an inappropriate vehicle for a substantive discussion of the issue and the Chief Justice would thus simply affirm the Superior Court. *See* Concurring and Dissenting Op. at 2. We reverse the Superior Court, however, on the issue actually raised in this appeal, which implicates that court's prerogative to essentially ignore a prior decision from this Court which clearly articulates hearsay alone is insufficient to establish a *prima facie* case, and where a majority of the justices relied to some degree on due process principles to reach that conclusion.

clear the full panoply of trial rights do not apply at a preliminary hearing, but the hearing is nevertheless a critical stage of the proceedings, and is intended under Rule 542 to be more than a mere formality. Due process clearly attaches, but due process is a flexible concept, incapable of precise definition. *See Turner*, 80 A.3d at 764 (although its basic elements are known, procedural due process "not capable of an exact definition"). Here, at the hearing afforded appellant, the Commonwealth relied exclusively and only on evidence that could not be presented at a trial. This is precisely the circumstance and rationale upon which five Justices in *Verbonitz* determined Buchanan's right to due process was violated.[10]

---

[10] Despite Justice Baer's contrary view in dissent, it is abundantly clear the sole issue in *Verbonitz* was whether hearsay alone is sufficient to establish a *prima facie* case. It is equally and perfectly clear, a five-member majority of that Court held hearsay alone is insufficient to establish a *prima facie* case. Moreover, as the dissent acknowledges, those five justices all invoked a due process rationale by quoting the exact same language from *Ceja*, 427 A.2d at 647: "fundamental due process requires that no adjudication be based solely on hearsay evidence." *Verbonitz*, 581 A.2d at 174 (Larsen, J., lead opinion); *id.* at 176 (Flaherty, J., concurring). Justice Baer minimizes the precedential import of this clear agreement among the members of the *Verbonitz* Court by opining that had the lead (plurality) expression by Justice Larsen actually relied on a due process rationale, Justice Flaherty "would have surely joined that portion of the opinion[.]" Dissenting Op. at 5. In our view, however, whatever "sure" reasons existed for the separate expressions, by quoting the identical language from *Ceja*, five justices in *Verbonitz* agreed hearsay alone is insufficient to establish a *prima facie* case due in part to principles of fundamental due process.

## IV. Conclusion

We reaffirm the validity of *Verbonitz*. We therefore reverse the Superior Court's decision below and expressly disapprove *Ricker I*. The appellant is discharged without prejudice.[11]

Justices Todd, Donohue and Wecht join the opinion.

Justice Wecht files a concurring opinion.

Chief Justice Saylor files a concurring and dissenting opinion.

Justice Baer files a dissenting opinion in which Justice Mundy joins.

---

[11] Dismissal of charges and discharge of the accused for failure to establish a *prima facie* case at the preliminary hearing is an interlocutory order, *see LaBelle*, 612 A.2d at 420, which does not implicate double jeopardy concerns. *See Liciaga v. Court of Common Pleas of Lehigh Co.*, 566 A.2d 246, 267 (Pa. 1989). Because the Commonwealth relied on a reasonable yet imprecise reading of Rule 542, we discharge appellant without prejudice to the Commonwealth to refile charges and proceed with a new preliminary hearing.